THIGPEN, Judge.
This is a workmen’s compensation case.
William Guster filed a complaint against Goodyear Tire and Rubber Company (Goodyear) alleging that he had suffered a work-related injury on January 12, 1987, and again on March 16, 1987, while employed by Goodyear. Guster alleged that the two injuries to his lower back have caused him to have permanent physical impairment. A trial was held and the trial court ruled in favor of Goodyear. Guster’s post-judgment motion was denied and he appeals, asserting that the trial court erred in finding that there was insufficient credible evidence presented to establish that a compen-sable injury occurred.
At the outset, we note the limited standard of review in a workmen’s compensation case. Our review involves a two-step process which first requires a determination of whether there is any legal evidence to support the trial court’s findings. Next, if such evidence is found, we then determine whether any reasonable view of that evidence supports the trial court’s judgment. Ex parte Eastwood Foods, Inc., 575 So.2d 91 (Ala.1991).
The record reveals the following pertinent facts. Guster testified that the first injury occurred in January 1987, when he experienced back pain after lifting some poles into boxes. He completed his shift, but told his supervisor and a co-worker about his back pain. The next day, Guster *371 went to an emergency room, where Goodyear’s physician, Dr. Wilder, was contacted. Dr. Wilder prescribed pain medication and referred Guster to Dr. Frank Haws, a neurosurgeon. Guster did not work for four weeks while under the supervision of Dr. Haws. Guster received workmen’s compensation benefits from Goodyear during this time as a result of a union agreement. Dr. Haws released Guster to return to work, without restrictions, on March 9, 1987.
A few weeks later, Guster claims that he was injured again while lifting a three-hundred-pound box. Guster claims that he told a co-worker that he had hurt his back and then went to see a supervisor. Goodyear’s records reveal that on March 20, 1987, Guster was seen in the company dispensary and a heat pack was applied to his back. Guster remained at home for several weeks and was later seen by Dr. Wilder. Dr. Wilder referred Guster to Dr. Haws, who instituted a physical rehabilitation program for Guster.
In June 1987, Guster met with Mai Rush of Goodyear’s personnel department to discuss his employment situation. Mr. Rush testified that Guster exhibited extreme discomfort while in his office, but upon watching Guster leave the building, Guster moved about freely and “jumped” into his car in the parking lot.
Guster completed his rehabilitation program in September 1987, and was again released to return to work without restrictions. Subsequently, however, Guster’s employment was terminated under his union contract because he was unsuitable for industrial work. The record reveals that such termination was not related to any physical limitations which Guster might have. Guster contested this discharge and stated at an arbitration hearing that he was able,to return to his former job. The discharge, however, was upheld principally due to absenteeism and insubordination. After Guster’s employment termination, he underwent further medical examinations and tests, all of which reported normal results.
A year following his release by Dr. Haws, Guster complained to other physicians about his back pain. In December 1988, a MRI revealed evidence of a herniated disk, which was consistent with Guster’s complaints. The last physician to examine Guster before trial was Dr. Ira Denton, who opined that there was no evidence of any nerve impingement or ruptured or herniated disks, and that all objective tests were completely normal.
Guster has undergone no surgery for the alleged injuries and he does not wear a back brace. The evidence further reveals that Guster applied for and was awarded unemployment compensation benefits after termination of his employment. As part of this process, Guster indicated that he was ready, willing and able to accept employment if it was offered to him. Guster has since applied for jobs in the manufacturing field and has also certified on those applications that he would be capable of performing employment if it was offered to him.
The evidence shows that after his employment termination, Guster enrolled in a refrigeration and air conditioning course which included some “hands-on” training. Guster testified that he has since performed some work in this area, but that at the time of trial, he was employed as a security guard.
In determining that there was no com-pensable injury, the trial court found the following:
“After due consideration of all of the evidence and having ... determined the credibility of the witnesses, and having noted certain contradictions in the testimony, and having made due inquiry into the bona fides of the plaintiff’s claim and the liability and defenses of the defendant, ... the Court finds that ... there was not presented sufficient credible evidence to satisfy the Court to a legal measure of proof that a compensable injury occurred.”
The trial court’s findings on conflicting testimony are conclusive where there is evidence to support the conclusions. Fisher v. Bruno’s Food Stores, Inc., 588 So.2d 488 (Ala.Civ.App.1991). Our review of the *372 record reveals that a reasonable view of the legal evidence presented to the trial court supports its finding that Guster does not suffer from a compensable injury. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
ROBERTSON, P.J., and RUSSELL, J., concur.