Jonathan Edwards filed a complaint for workers' compensation benefits in the Circuit Court of Madison County against Jesse Stutts, Inc., alleging that he was owed benefits for a work-related injury. After a hearing, the trial court determined that Edwards was not entitled to workers' compensation benefits because he failed to "satisfy [the] court that he suffered an injury as a result of an accident which arose out of and in the course of his employment." Edwards appeals.
The accident complained of is alleged to have occurred on July 27, 1993; therefore, the new Alabama Workers' Compensation Act ("new Act") is controlling. Our standard of review was changed by the new Act. § 25-5-81(e), Code 1975. In Whitsett v.BAMSI, Inc., 652 So.2d 287 (Ala.Civ.App. 1994), this court announced the new standard of review in the following manner:
 "We will view the facts in the light most favorable to the findings of the trial court. The trial court's judgment will not be reversed unless it is clear that the trial court's findings are manifestly contrary to the evidence as contained in the record as a whole or unless it is clear that fair-minded persons in the exercise of impartial judgment would adopt a contrary conclusion."
The record reflects that Edwards was hired by Stutts in the summer of 1993. Approximately six weeks later, on July 27, 1993, he was working at Redstone Arsenal in Huntsville, Alabama, cleaning up debris and scrap from a job site. Edwards testified that while he was unloading a flat-bed truck, he heard a loud noise that startled him and knocked him off balance. Instead of falling on the rail of the flat-bed truck, he jumped to the ground and "landed wrong." Upon impact he felt a sharp burning pain across the middle section of his back. At the time of the alleged accident, Edwards was working alone.
Edwards testified that when his co-worker, Robert Hollis, and his foreman, Terry Dorning, returned to the job site, he told them that he had hurt his back. He then asked them to help him unload the remaining debris. Edwards testified that Dorning asked him if he needed to go home. He replied that he could not afford to go home because of financial reasons. Edwards continued to work the remainder of the day.
As Edwards drove home after work, the pain in his back grew progressively worse. *Page 1014 
He went to his chiropractor that night. The chiropractor determined that due to the pain, Edwards needed to be transported to the hospital. X-rays, taken at the emergency room, were normal. He was instructed to return home and rest for a week.
The chiropractor testified by deposition that he had treated Edwards for a variety of back ailments over the previous five years. There were several times that he treated Edwards for cervical and lumbar pain over the previous years which had resulted from both traumatic and non-traumatic origins. He testified that Edwards had never complained about pain in his mid-back until July 27, 1993. The record reflects that Edwards had seen the chiropractor on July 26, 1993, for a routine back adjustment. The chiropractor had also treated Edwards on July 22 or 23, 1993, for pain sustained as a result of lifting a picnic table.
Terry Dorning testified that he remembered working with Edwards on July 27, 1993. He testified that when he returned to the job site, he saw Edwards climbing into the cab of the truck and that he did not notice Edwards having any trouble with that maneuver. Dorning testified that at no time during the remainder of the day did Edwards comment about the alleged accident or tell him that the middle of his back was hurting because he had jumped off the truck. He testified that he did remember Edwards stating that his back was sore but that he had been complaining of a sore back for some time prior to that date, that his complaining was "a pretty routine thing," and that he complained "daily" of a sore back.
Dorning further testified that the sound of static engine testing could not have startled Edwards because a public address announcement is made that a test is about to occur and red flashing lights go on throughout the arsenal. He testified that when a test first starts, it is not a loud sudden sound; the sound starts slow, increases to a maximum, and then stops.
Robert Hollis testified essentially to the same events as did Dorning. He stated that throughout the remainder of the working day, Edwards did not mention that he had suffered an accident. He testified that when he questioned Edwards as to why he did not have the truck unloaded, all Edwards said was that he was hot and tired and that his shoulder and back were hurting him. Hollis said that Edwards had made complaints about his back prior to July 27, 1993, and that the complaint of July 27, 1993, did not appear to be any different than the previous complaints. He stated that Edwards complained about his back, his shoulder, and his elbow fairly regularly.
As is evident from our rendition of the facts, the evidence surrounding the alleged accident is contradictory and conflicting. The trial court's findings on conflicting testimony are conclusive where there is substantial evidence to support them. Guster v. Goodyear Tire Rubber Co.,611 So.2d 370 (Ala.Civ.App. 1992). The new Act did not alter the rule that this court does not weigh the evidence before the trial court. The record supports the trial court's finding. Its finding is not manifestly contrary to the evidence. Whitsett.
The judgment of the trial court is affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.