YATES, Judge.
William Ernie Moore sued his employer, Drummond Company, Inc, on December 21, 1995, seeking to recover workers’ compensation benefits for occupational pneumoconio-sis. Moore alleged that he had contracted the disease while working within the line and scope of his employment as an underground coal miner with Drummond. Following an ore tenus proceeding, the court, on August 22, 1997, entered an order, finding that Moore had contracted pneumoconiosis in the course of his employment and that he had suffered a 65% permanent partial disability to the body as a whole. Drummond appeals.
Drummond contends that the “clear and convincing evidence” standard of proof is applicable to Moore’s claim and that Moore failed to satisfy this burden in proving his claim. Claims for occupational pneumoconio-sis are governed by Article IV of the Workers’ Compensation Act. Section 25-5-110(1), Ala.Code 1975 (1992 repl. vol.), provides this definition:
“OCCUPATIONAL DISEASE. A disease arising out of and in the course of employment, including occupational pneu-moconiosis and occupational exposure to radiation as defined in subdivisions (2) and (3), respectively, of this section, which is due to hazards in excess of those ordinarily incident to employment in general and is peculiar to the occupation in which the employee is engaged but without regard to negligence or fault, if any, of the employer.”
Section 25-5-110(2) defines “occupational pneumoconiosis” as “[a] disease of the lungs *224 caused by inhalation of minute particles of dust over a period of time, which dust is due to causes and conditions arising out of and in the course of the employment.” Section 25-5-81 (e) provides:
“Evidence. — The decision of the court shall be based on a preponderance of the evidence as contained in the record of the hearing, except in cases involving injuries which have resulted from gradual deterioration or cumulative physical stress disorders, which shall be deemed compensable only upon a finding of clear and convincing proof that those injuries arose out of and in the course of the employee’s employment.”
Because occupational pneumoconiosis results from inhalation of dust particles over a period of time, Drummond argues that it results from a “gradual deterioration” and, therefore, that Moore must prove by clear and convincing evidence that the disease arose out of and in the course of his employment. We disagree.
Section 25-5-111 provides:
“Right to compensation for death or disablement. — Where the employer and the employee are subject to this chapter, the disablement or death of an employee caused by the contraction of an occupational disease, as defined in Section 25-5-110, shall he treated as an injury by accident, and the employee or, in case of his death, his dependents shall be entitled to compensation as provided in this article. In no case, however, shall an employer be liable for compensation by reason of the contraction of an occupational disease, as defined in Section 25-5-110, or for disability or death resulting therefrom unless such disease arose out of and in the course of the employment and resulted from the nature of the employment in which the employee was engaged.”
(Emphasis added.) It is clear from § 25-5-111 that disablement from the contraction of an occupational disease, including occupational pneumoconiosis, is to be treated as an accidental injury rather than as an injury that results from gradual deterioration. Therefore, the “preponderance of the evidence” standard is applicable to this case rather than the “clear and convincing evidence” standard.
Drummond next contends that Moore failed to prove that he contracted occupational pneumoconiosis in the course of his employment with Drummond. Moore’s last day of employment with Drummond was December 31, 1993; thus, this case is governed by the new Workers’ Compensation Act. The new Act provides that on appeal the review of the proof and the consideration of other legal issues shall be without a presumption of correctness. § 25 — 5—81(e)(1), Ala.Code 1975. It further provides that when a court reviews a trial court’s findings of fact, those findings will not be reversed if they are supported by substantial evidence. § 25-5-81(e)(2), Ala. Code 1975. Our supreme “has defined the term ‘substantial evidence,’ as it is used in § 12-21-12(d), to mean ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” Ex parte Trinity Industries, Inc., 680 So.2d 262, 268 (Ala. 1996), quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). This court has also concluded: “The new Act did not alter the rule that this court does not weigh the evidence before the trial court.” Edwards v. Jesse Stutts, Inc., 655 So.2d 1012, 1014 (Ala.Civ.App.1995).
Before the 1992 amendments to the Act, claims for benefits that were predicated on occupational pneumoconiosis were governed by §§ 25-5-140 through -152. The claims based on pneumoconiosis of coal miners were governed by §§ 25-5-170 through -180. See Reynolds Metals Co. v. Stults, 532 So.2d 1035 (Ala.Civ.App.1988). The 1992 amendments to the Act repealed those sections. Presently, claims for benefits that are predicated on occupational pneumoconiosis, including pneu-moconiosis of coal miners, are governed by §§ 25-5-110 through -123.
Section 25-5-110 sets forth the conditions for recovery for occupational diseases, including pneumoconiosis. To be compensa-ble as an occupational disease, the disease must: (1) arise out of and in the course of the employee’s employment; (2) be due to *225 hazards in excess of those ordinarily incident to employment in general; and (3) be peculiar to the occupation in which the employee is engaged. Further, the disease must result from the nature of the employment in which the employee was engaged. § 25-5-111. To prove “nature of the employment” under the former provisions, one had to prove (1) a particular hazard of occupational pneumoco-niosis, (2) that the hazard distinguished the employment from the usual run of occupations, and (3) that the hazard was in excess of the hazards of occupational pneumoconiosis attending employment in general. Reynolds Metals Co., supra. See also Drummond Co. v. Key, 630 So.2d 473 (Ala.Civ.App.1993).
After considering the depositions and medical records of Moore’s treating physicians and after receiving ore tenus evidence, the court made the following findings:
“1. That the Plaintiff, William Ernie Moore, was an employee of the Defendant, Drummond Company, Inc., on and prior to December 31,1993. [Moore] is a 59-year-old male with a third-grade education who has a problem reading and writing and has worked at heavy manual labor all his life and has worked in underground coal mining for over 22 years as a common laborer, ‘face man’, and pinning machine operator. As a pinning machine operator [Moore] drilled holes in the top of the underground mine and the coal dust and rock dust came down on him and he worked at this job for 15 years and as a common laborer the rest of the 22 years, and the dust was so bad at times he could hardly see and it covered his clothes, parts of [his] body and even got into his nose, and he has shortness of breath and cannot hunt anymore except on a four wheeler, cannot mow his yard and has difficulty sleeping at night.
[[Image here]]
“3. That [Moore] suffered an injury which arose out of and in the course of his employment. Said injury is the occupational lung disease known as pneumoconio-sis commonly referred to as ‘black lung’ or ‘coal worker’s disease’. The disease arose out of and in the course of his employment, and it resulted from the nature of his employment in that the removal and extraction of coal from this earth releases coal dust particles as well as rock particles which are inhaled and breathed by coal miners; in particular, the Court finds that the coal mining industry has attached to it the particular hazard of the contraction of coal worker’s disease, and that particular hazard is different from and distinguishable from hazards associated with the usual run of occupations. The hazard of coal worker’s disease is in excess of the usual hazards that are attached to the normal run of occupations.
“4. That [Moore’s] injuries are continuing and cause him to suffer extreme breathing problems, limitations of ability to exert himself and to perform work.
[[Image here]]
“6. That up through the time of his last employment, [Moore] has worked as a full-time regular employee for [Drummond] performing all the normal and usual duties of his job; that throughout his history as a coal miner since beginning employment in the coal mines until the time of his retirement on December 31, 1993, these jobs exposed [Moore] to coal dust and rock dust on a regular and routine basis; that at times the dust was so extreme that [the] equipment could not be seen.
[[Image here]]
“8. That the Court has had the opportunity to observe [Moore] when testifying and observe his credibility and his demean- or and finds that the testimony of [Moore] is ... believable; that the Court has thoroughly reviewed all the depositions and reports of the doctors in this case and finds that [Moore] is permanently, partially disabled in an amount of sixty-five percent (65%) to his body as a whole which impairs and disables [Moore]....”
The medical evidence is disputed. Moore saw Dr. Henry Beeler, his family doctor, in October 1994. Moore was complaining of a cough and shortness of breath. Dr. Beeler ordered chest X-rays and a spirometry study. The X-rays indicated “no evidence of significant ‘black lung’ disease.” Dr. Beeler’s records indicated that he did not find any evidence of “black lung” disease. Further, the results of the spirometry study were normal.
*226 In April 1996, Moore was seen by Dr. Allan Goldstein, who specializes in internal medicine and lung diseases. Dr. Goldstein took a full history of Moore and performed a physical examination, made X-rays, and completed a spirometry test, as well as arterial blood gas studies. Dr. Goldstein testified that the spirometry test performed on Moore was normal. Dr. Goldstein also interpreted the X-rays as being normal. He stated that simple pneumoconiosis is a nodular disease, and that if a person has low levels of nodular disease one may get different interpretations from reading the X-rays. He further stated that one person may read the X-ray as normal, while another may read it as a “category one.” He testified that the more diffuse the disease, the less likely that there will be disagreement as to whether the disease is present.
After reviewing the results of the X-rays and the spirometry test, and based on Moore’s history, Dr. Goldstein concluded that Moore does not suffer from occupational pneumoconiosis. Dr. Goldstein also testified that Moore’s symptoms are consistent with those of a person suffering from occupational pneumoconiosis; however, he said, these symptoms are consistent with other lung diseases and are not specific to occupational pneumoconiosis. He stated that Moore’s cough and sputum production could be related to sinus problems that he was being treated for by Dr. Alice Morgan.[1]
Dr. Jack Hasson reviewed X-rays of Moore that were taken in September 1995, February 1996, and December 1996. His report indicated that the X-rays were negative for occupational pneumoconiosis.
Moore was evaluated by Dr. Stephen Kim for occupational pneumoconiosis in December 1995. In his medical practice, Dr. Kim regularly treats coal miners suffering from occupational pneumoconiosis. An X-ray taken by Dr. Kim revealed “questionable fibronodular lesions over both lung fields.” Dr. Kim also ordered an X-ray to be performed on Moore at Walker Baptist Medical Center. This X-ray revealed no significant abnormalities. Dr. Kim also performed a spirometry test on Moore; however, he did not rely upon the test in making his findings.
Dr. Kim testified that spirometry tests are unreliable because they are dependent on many variables and that one could have a normal result on a spirometry test and still have occupational pneumoconiosis. He further testified that in most cases occupational pneumoconiosis will not show up on X-rays. He stated that a patient’s lungs could be filled or coated with the dust particles but that occupational pneumoconiosis would show up on the X-rays only when there have been fibrotie changes to the lungs, which may take years. Moore returned to Dr. Kim on several occasions in 1996 and 1997, complaining each time of shortness of breath, difficulty breathing, tightness in the chest, and wheezing.
Dr. Kim testified that, based on his examination and overall evaluation, he thought Moore, in fact, had occupational pneumoconi-osis. He testified that in the X-rays he saw fibrotie changes that were causally related to occupational pneumoconiosis. Dr. Kim stated that the longer someone is exposed to coal and rock dust, the more susceptible that person is to contracting occupational pneu-moconiosis, and that Moore’s history — longtime exposure to coal and rock dust — and his symptoms are consistent with those of a person who suffers from occupational pneumoco-niosis. When asked what he based his opinion on, Dr. Kim replied:
“A. He worked under the mine for sixteen years, total some twenty-three years worked in the mines. He does have a chronic shortness of breath, which is mild to moderate, and he does have questionable fibronodular changes in both lungs diffusely, which is comparable with black lung. In consideration of all the above factors, I concluded that [Moore] does have mild to moderate lung disease due to the black lung.”
Dr. William Crunk is a vocational rehabilitation expert. Dr. Crunk performed a voca *227 tional evaluation of Moore and testified that, based on Moore’s age, education, work experience, and the nature of his exertional ability, he determined Moore to be 100% disabled.
It is well settled that the court has wide discretion in reviewing the evidence and is not bound by any certain medical evidence. 3-M Co. v. Myers, 692 So.2d 134 (Ala.Civ. App.1997).
“ ‘The trial court is not bound by expert testimony, but, having observed the claimant and having heard his testimony, it is able to exercise its own judgment in reaching its conclusions. Further, in arriving at its judgment, the trial court may consider all the evidence before it, as well as its own observations. The trial court may then interpret what it has heard and observed, according to its own judgment.’ ”
Id., at 137 (citations omitted). Additionally, in a workers’ compensation case questions of the weight of the evidence are not before this court on appeal. Id.
After carefully reviewing the record, we cannot say that the trial court erred in finding that Moore suffered from occupational pneumoconiosis and in finding that he has a 65% permanent partial disability. The evidence indicated that Moore had been employed as a coal miner for approximately 22 years and had worked approximately 16 of those years underground, where he was exposed to substantial amounts of coal and rock dust on a constant basis. The medical evidence indicated that Moore suffered from symptoms consistent with occupational pneu-moconiosis. The medical evidence was disputed regarding the X-rays; Dr. Kim testified that he read the X-rays as showing fibronodular changes over both lung fields, and he testified that Moore had occupational pneumoconiosis, whereas the remaining physicians read the X-rays as normal and stated that he did not have the disease. The evidence indicated, however, that in most cases occupational pneumoconiosis will not show up on the X-rays. Dr. Goldstein testified that where there are low levels of the disease present one may get different interpretations from reading the X-rays. The trial court was free to choose which evidence to rely on in reaching its judgment. Accordingly, the judgment is affirmed.
AFFIRMED.
ROBERTSON, P.J., and MONROE and CRAWLEY, JJ., concur.
THOMPSON, J., dissents.

. Moore had been treated by Dr. Alice Morgan for several sinus problems, including sinusitis and nasal polyps.