[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1250 
Clarence Whitsett sued his employer, R.L. Carnes Logging Contractors, Inc. ("Carnes Logging"), on May 5, 2000, seeking to recover workers' compensation benefits for injuries he sustained to his left leg and lower back during the course of his employment. Following an ore tenus proceeding, the trial court, on December 6, 2001, entered an order finding that Whitsett was permanently and totally disabled as the result of his work-related accident, and it awarded benefits accordingly. Carnes Logging appeals.
This case is governed by the 1992 Workers' Compensation Act. This Act provides that an appellate court's review of the standard of proof and its consideration of other legal issues shall be without a presumption of correctness. § 25-5-81(e)(1), Ala. Code 1975. It further provides that when an appellate court reviews a trial court's findings of fact, those findings will not be reversed if they are supported by substantial evidence. § 25-5-81(e)(2). Our supreme court "has defined the term `substantial evidence,' as it is used in § 12-21-12(d), to mean `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" Ex parte Trinity Indus., Inc., 680 So.2d 262,268 (Ala. 1996), quoting West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989). This court has also concluded: "The new Act did not alter the rule that this court does not weigh the evidence before the trial court." Edwards v. Jesse Stutts, Inc., 655 So.2d 1012,1014 (Ala.Civ.App. 1995).
The trial court made the following findings of fact and conclusions of law, stating, in part: *Page 1251 
 "5. At the time this matter came before this Court, Clarence Whitsett was 52 years of age, with a date of birth of April 9, 1949.
 "6. Mr. Whitsett attended High School in Grove Hill, through the ninth grade, but did not receive a diploma nor has he received the equivalent of a diploma.
 "7. Mr. Whitsett testified at trial that he had been previously employed as a laborer, mechanic and truck driver. This history included work for James E. Bush, Pete Bush Honda, R R Construction, Whatley Timber Co., Powell Trucking and Todd Overstreet Trucking.
 "8. In 1995, Mr. Whitsett began working for [Carnes Logging] as a log truck driver. His job duties included assisting in the preparation of the logs for loading, including sawing off small limbs so that the logs would stack neatly on the truck, driving a skidder, running the loader and driving the truck to transport the logs to their destination.
 "9. Mr. Whitsett testified that, on or about October 27, 1999, he was sawing logs to prepare them for loading onto the logging truck. While working within the line and scope of his employment, he suffered an injury to his lower back when he jumped back to escape from a log which unexpectedly rolled off of the pile.
 "10. This Court heard Mr. Whitsett's account of his accident and also heard testimony from Todd Barnes who was a coworker of Mr. Whitsett's and witnessed the accident. Mr. Barnes testified that he saw Mr. Whitsett leaning over sawing the logs in preparation for loading on the truck when one of the logs slipped and rolled toward Mr. Whitsett. Mr. Barnes saw Mr. Whitsett jerk back and jump away to avoid being hit by the log. He approached Mr. Whitsett concerned that he may have been injured and learned that the rolling log had only scraped Mr. Whitsett's leg and that Mr. Whitsett had injured his back as he jumped back to escape the rolling log.
 "11. In addition to coworker Todd Barnes, this Court heard from coworkers Willie Mobley, Eddie Williams, and Timothy Booker. [The coworkers] testified that Mr. Whitsett was a hard-working, honest, conscientious and very reliable employee that always did his job and was willing to help others with their work whenever he could.
 "12. Mr. Whitsett had problems with his back prior to his injury on October 27, 1999; however, any problem that he had with his back did not prevent him from working full time performing all of his required duties for [Carnes Logging]. His coworkers . . . testified that any problems Mr. Whitsett had with his back before his injury did not in any way affect his job performance or his ability to accomplish all of the tasks required of his job. This testimony was not disputed by any witness.
". . . .
 "14. Mr. Booker testified that he sometimes helped out Mr. Whitsett but that everyone, including Mr. Whitsett, always helped each other out to the get the job done. Mr. Booker stated that he helped Mr. Whitsett because of Mr. Whitsett's age not because he wasn't able to do the work himself.
 "15. After his injury on October 27, 1999, Mr. Whitsett was seen and treated by, among others, Dr. Robert Cain who is a board-certified internist and Dr. Carter Harsh who is a board-certified neurosurgeon.
 "16. Dr. Cain, based upon the results of an MRI performed on November 12, 1999, diagnosed Mr. Whitsett with spinal *Page 1252 
stenosis and partial paralysis of the left leg.
 "17. Dr. Cain stated that Mr. Whitsett had prior back problems before October 27, 1999. However, according to his records, Mr. Whitsett continued to work until his injury of October 27, 1999.
 "18. When Dr. Cain examined Mr. Whitsett on November 2, 1999, he noted that Mr. Whitsett had new symptoms which included numbness and paresthesias.
 "19. Specifically, Dr. Cain noted in a letter, referred to in his deposition, that Mr. Whitsett had back pain on the left side `secondary to an accident that occurred on his job.' Dr. Cain acknowledged that he had prior pain on the right but had not experienced the weakness and numbness that he had on the left as a result of `that' accident. Dr. Cain further noted that Mr. Whitsett was severely debilitated from the accident on October 27, 1999.
 "20. Dr. Cain testified that Mr. Whitsett had back pain before October 27, 1999, but he was working. Following the accident, he was no longer able to work. He was more limited, in more pain and his complaints reflected the results of a more recent injury that was not present before. There was a noticeable difference in his complaints following the injury of October 27, 1999.
 "21. Dr. Cain further testified that the accident of October 27, 1999, combined with his pre-existing back problem, has rendered Mr. Whitsett totally disabled.
". . . .
 "23. Due to the injury to his back, and the pain that he experiences, Mr. Whitsett has not been able to return to work. Mr. Whitsett testified that he continues to suffer severe pain in his lower back with pain and numbness radiating into his hips and legs and limited use of the left side of his body.
 "24. Plaintiff's vocational expert, Mr. James Cowart, stated in his report that he conducted a vocational evaluation on Mr. Whitsett. Based on his review of Mr. Whitsett's medical records, as well as considering Mr. Whitsett's education, background, and qualifications, Mr. Cowart stated that Mr. Whitsett is totally disabled and that he was not aware of any type of gainful employment that Mr. Whitsett would be able to perform.
 "25. [Carnes Logging] offered no vocational expert testimony to rebut the opinion of Mr. Cowart.
 "26. This Court notes that Mr. Whitsett has received no worker's compensation disability payments to date."
The trial court determined that the back problems Whitsett suffered before his workplace accident were not preexisting for the purposes of a workers' compensation award, because he was able to perform all the duties required of his employment. The court concluded that Whitsett suffered a compensable injury to his back on October 27, 1999, while working within the line and scope of his employment and that he was rendered permanently and totally disabled.
Carnes Logging initially argues that the trial court incorrectly applied the law to the facts of this case. We disagree. "It is well settled that no preexisting condition is deemed to exist for the purposes of a workers' compensation award if the employee was able to perform the duties of his job prior to the subject injury." Taylor v. Mobile Pulley Mach. Works, 714 So.2d 300, 302 (Ala.Civ.App. 1997). This court has stated:
 "`If the employee was able to perform his duties prior to the injury, no preexisting condition is present for [the] purpose *Page 1253 
of [workers'] compensation. If a job related injury combines with a preexisting condition to produce a disability, it does not affect a compensation award. Further, if a preexisting condition is aggravated by a work-related injury, the condition is still compensable even though the accident may not have caused the same injury in a normal person.'"
Id., at 302, quoting G.C. Colyer Co. v. McAdams, 562 So.2d 1326,1328-29 (Ala.Civ.App. 1990) (citations omitted). In McAdams, this court affirmed the trial court's finding that the employee was permanently and totally disabled, where the employer had argued that the employee's preexisting condition would have eventually led to the disability even in the absence of the on-the-job injury.
Before Whitsett's workplace accident on October 27, 1999, he sought treatment from Dr. Robert Cain, an internist, on May 3, 1999, for a number of complaints, including back pain and leg pain. Whitsett requested that Dr. Cain place him on disability. Dr. Cain diagnosed Whitsett with degenerative joint disease, hypertension, lower back pain, anxiety, headaches, and work-related stress. He recommended that Whitsett not return to work. Whitsett returned to Dr. Cain on several occasions complaining of lower back pain. X-rays revealed that Whitsett had disc space narrowing at the L4-L5 and L5-L6 levels. Dr. Cain's diagnosis continued to be degenerative joint disease and low back pain.
Dr. Cain referred Whitsett to Dr. Peter Saway. Whitsett was seen by Dr. Saway on September 22, 1999, complaining of lower back pain, which extended to his right leg. Whitsett informed Dr. Saway that he was a truck driver and that his pain was worse after driving for an extended amount of time. Dr. Saway found that Whitsett had osteoarthritis of the lumbosacral spine and low back pain with radicular symptoms emanating from his "SI" joint and possible lumbar radiculopathy. Dr. Saway treated Whitsett with pain medication and an injection and requested that he return in several months "provided his trucking schedule permits" or to call if "there are problems or ongoing difficulty." Dr. Saway did not take Whitsett off work.
The injury Whitsett complained of occurred on October 27, 1999, as he was sawing limbs off a tree. Whitsett twisted his back as he jumped back, out of the way of a log rolling toward him. He returned to Dr. Cain following the work-related accident complaining of low back pain and an inability to lift things.
Dr. Cain's record of December 3, 1999, indicates that Whitsett's back pain was originally on the right side, but that following the work-related accident, the pain became progressively worse on the left side with numbness and paresthesias[1] in the left leg. Dr. Cain's diagnosis on December 3, 1999, was paresthesias of the left leg and spinal stenosis. Dr. Cain testified that the numbness and paresthesias that Whitsett experienced after the work-related accident were new complaints, in stark contrast to the previous complaints, and that the new complaints originated with the work-related accident. Dr. Cain testified that Whitsett had suffered from persistent back pain and degenerative joint disease before the work-related accident, and that the accident was "the factor that sort of threw him overboard in terms of not being able to regain his ability to work." Dr. Cain testified that Whitsett's work-related accident and his preexisting conditions combined to render him totally disabled. *Page 1254 
On December 3, 1999, Dr. Cain dictated the following letter:
 "Mr. Whitsett is a patient of mine who now has back pain on the left side secondary to an accident that occurred on his job. The patient, prior to that, did have pain on the right, but he did not experience the weakness and numbness that he now has on the left as a result of the accident. The patient is severely debilitated from that accident. Because of this, the patient is unable to use his left side as fully as he had before."
Before the work-related accident of October 27, 1999, Whitsett suffered from low back pain and degenerative joint disease. Dr. Cain recommended that Whitsett stop working; however, Whitsett continued to work. The overwhelming evidence indicates that Whitsett was able to perform all of the regular duties required of his job. Although the evidence indicates that his job may have aggravated his symptoms, nothing indicates that it prevented him from performing his required duties. His coworkers all testified that he performed the duties required of his employment. After the work-related accident, Whitsett experienced new complaints of numbness, paresthesias, and pain on the left side. Dr. Cain testified that these new complaints originated with the work-related accident and combined with Whitsett's already existing condition to render him totally disabled. We conclude that Whitsett presented substantial evidence indicating that he experienced new complaints after his work-related accident; that he was able to perform all of the regular duties required of his job before the work-related accident; and that following the work-related accident he was unable to return to work.
Accordingly, we conclude that the trial court did not err in determining that the back problems Whitsett experienced before the work-related accident were not a preexisting condition for the purposes of awarding him workers' compensation benefits.
Carnes Logging next argues that the trial court erroneously ignored the records and findings of Dr. Peter Saway. We disagree. Whitsett was seen by Dr. Saway on one occasion. The records from that visit were admitted into evidence and were before the trial court. Simply because the trial court did not specifically mention those records or Dr. Saway's examination of Whitsett in its order does not mean that the court did not consider that evidence. In reality, those records do not add anything to the evidence that already existed. The records indicate that Whitsett suffered from right leg and back pain and that his job as a truck driver aggravated those symptoms. Dr. Saway told him to return "provided his trucking schedule permits" and to call if "there are problems or ongoing difficulty." Whitsett did not return and did not call. He did continue to work, performing all of his regular duties. Accordingly, we find no error here. Carnes Logging next argues that the trial court erred in failing to apply § 25-5-58, Ala. Code 1975. Section 25-5-58
provides: "If the degree or duration of disability resulting from an accident is increased or prolonged because of a preexisting injury or infirmity, the employer shall be liable only for the disability that would have resulted from the accident had the earlier injury or infirmity not existed." However, this section is not applicable where the earlier injury or infirmity was not so disabling as to prevent the employee from performing the normal duties of his employment. Boothe v. Jim WalterRes., Inc., 660 So.2d 604 (Ala.Civ.App. 1995). We have already established that Whitsett's preexisting back pain and *Page 1255 
degenerative joint disease did not prevent him from performing the normal duties of his employment. Accordingly, the trial court did not err in failing to apply § 25-5-58.
Carnes Logging next argues that the trial court applied the wrong standard of proof in this case. Carnes Logging argues that Whitsett was required to prove medical and legal causation by clear and convincing evidence. This argument is completely meritless. Whitsett's injury arose from an accident — the sudden jumping and twisting to avoid a loose log coming toward him unexpectedly. Therefore, he was required to prove a compensable injury by a preponderance of the evidence. § 25-5-81(c), Ala. Code 1975. An employee is only required to prove a compensable injury by clear and convincing evidence when the alleged injury has resulted from gradual deterioration or cumulative physical stress. §25-5-81(c), Ala. Code 1975.
Carnes Logging next argues that the trial court improperly admitted the testimony of Dr. Robert Cain. We disagree. Dr. Cain was Whitsett's primary physician before and after the work-related accident. His opinions relative to Whitsett's back injury were based on diagnostic tests, physical examinations, and patient history, rather than, as Carnes Logging contends, contradicting recollections and assumptions. Such questions raised by Carnes Logging go to the weight and credibility of the evidence and not its admissibility. Obviously, the trial court resolved the weight and credibility issues in favor of Whitsett. Accordingly, we find no error in the admission of Dr. Cain's testimony.
Carnes Logging next argues that Whitsett refused medical treatment, and that, therefore, he is barred from receiving disability benefits pursuant to § 25-5-77(b), Ala. Code 1975. We disagree. Dr. Carter Harsh, one of Whitsett's treating physicians, recommended that he undergo surgery. Whitsett had received no workers' compensation benefits, rather, he had sought treatment on his own accord payed for with his individual medical coverage through Blue Cross/Blue Shield. Whitsett testified that he was unable to have the surgery, because Dr. Harsh would not accept his insurance and he had no money to pay for it otherwise. Section 25-5-77(b), provides, in part:
 "If requested to do so by the employer, the injured employee shall submit to examination by the employer's physician at all reasonable times, but the employee shall have the right to have a physician of his or her own selection present at the examination, in which case the employee shall be liable to the physician of his or her own selection for his or her services. The employer shall pay for the services of the physician making the examination at the instance of the employer. . . . If the injured employee refuses to comply with reasonable request for examination, or refuses to accept the medical service or physical rehabilitation, which the employer elects to furnish under this chapter, the employee's right to compensation shall be suspended and no compensation shall be payable for the period of the refusal."
Section 25-5-77(b) is not applicable to this case, because Carnes Logging neither requested that Whitsett submit to a physical examination by one of its physicians nor was Carnes Logging providing any medical treatment for Whitsett. Whitsett had sought medical treatment on his own through his individual medical insurer.
Carnes Logging next argues that the trial court's finding of permanent disability is premature, because, it says, there was no evidence indicating that Whitsett had reached maximum medical improvement *Page 1256 
and that he had not yet had the recommended surgery. We agree. In order to recover permanent total disability benefits, an employee must have reached maximum medical improvement. See Alabama By-Products Corp. v.Lolley, 506 So.2d 343 (Ala.Civ.App. 1987). As previously noted, Dr. Harsh had recommended surgery for Whitsett; however, Whitsett had not undergone surgery at the time of the trial. Dr. Harsh testified that Whitsett would need surgery "to get better." He further stated that he would not assign Whitsett an impairment rating until surgery had been performed. Dr. Cain testified that the work-related accident combined with Whitsett's preexisting problems to render him totally disabled. However, Dr. Cain also testified that "with the type of work that [Whitsett] does, I could not imagine him being able to go back to work until his back is repaired."
We conclude that Carnes Logging presented evidence indicating that Whitsett had not yet reached maximum medical improvement and that his condition would improve with surgery. Accordingly, we conclude that the trial court's determination that Whitsett was permanently and totally disabled is premature at this point in time. Therefore, the judgment as to this finding is reversed and the case is remanded for the trial court to enter an order consistent with this court's opinion as it relates to this issue.
Carnes Logging next argues that the trial court failed to give it proper credit for certain advanced payments in violation of § 25-5-56, Ala. Code 1975. Carnes Logging has not paid any compensation benefits to Whitsett. However, Carnes Logging did make a loan of $700 to Whitsett after the work-related accident. Carnes Logging contends that it is entitled to a credit or set-off of $700 against any benefits due Whitsett. We disagree. Section 25-5-56, provides "All moneys voluntarily paid by the employer or insurance carrier to an injured employee in advance of agreement or award shall be treated as advance payments on account of the compensation." In order to receive a credit or set-off, payments made pursuant to this section must be made as advanced payments of workers' compensation. See Beatrice Foods Co. v. Clemons,54 Ala. App. 150, 306 So.2d 18 (Ala.Civ.App. 1975). Because the payments made to Whitsett were made as a loan and not an advance payment of workers' compensation benefits, Carnes Logging was not entitled to a credit or set-off. Accordingly, the trial court did not err in failing to give Carnes Logging a credit or set-off for the $700 it loaned to Whitsett.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Thompson and Pittman, JJ., concur.
[1] Paresthesias is a tingling or burning sensation in the extremities.