907 So.2d 1052 (2004)
FOSBEL, INC.
v.
Timothy Wayne NUNN.
Timothy Wayne Nunn
v.
Fosbel, Inc.
2030102.
Court of Civil Appeals of Alabama.
October 22, 2004.
Rehearing Denied December 30, 2004.
Certiorari Denied March 11, 2005
*1054 Paul J. DeMarco and J. Alex Wyatt III of Parsons, Lee & Juliano, P.C., Birmingham, for appellant/cross-appellee Fosbel, Inc.
Thomas E. Davis, Gadsden, for appellee/cross-appellant Timothy Wayne Nunn.
Alabama Supreme Court 1040534.
YATES, Presiding Judge.
Timothy Wayne Nunn sued his employer, Fosbel, Inc. ("Fosbel"), on January 18, 2002, seeking to recover workers' compensation benefits for injuries he sustained during the course of his employment with Fosbel. Following an ore tenus proceeding, the trial court, on June 13, 2003, entered an order finding Nunn to be 100% permanently and totally disabled. Fosbel filed a "motion to reconsider" on June 23, 2003. Nunn filed a petition seeking additional medical treatment by a new or additional pain-management specialist on July 21, 2003. Both Fosbel's motion and Nunn's petition were denied by the trial court on September 16, 2003. Fosbel appeals. Nunn cross-appeals.
This case is governed by the 1992 Workers' Compensation Act, § 25-5-1 et seq., Ala.Code 1975. That Act provides that an appellate court's review of the standard of proof and its consideration of other legal issues in a workers' compensation case shall be without a presumption of correctness. § 25-5-81(e)(1), Ala.Code 1975. It further provides that when an appellate court reviews a trial court's findings of fact, those findings will not be reversed if they are supported by substantial evidence. § 25-5-81(e)(2). Our supreme court "has defined the term `substantial evidence,' as it is used in § 12-21-12(d), to mean `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996)(quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)). This court has also concluded: "The [1992 Workers' Compensation] Act did not alter the rule that this court does not weigh the evidence before the trial court." Edwards v. Jesse Stutts, Inc., 655 So.2d 1012, 1014 (Ala.Civ.App.1995).
Nunn was 32 years old at the time of the trial and had completed high school. His employment history consisted primarily of unskilled jobs that required medium to heavy levels of exertion. He was employed by Fosbel in April 1996. Nunn was contracted out to work at a Gulf State Steel plant as a laborer to help repair coke ovens at the plant. That job was an unskilled position that required a medium to heavy level of exertion.
Nunn testified that on January 13, 2000, he was tightening nuts on safety spreaders on a coke oven, which was a required part of his job. He was standing on the oven wall when the wrench he was using slipped off the nut. He lost his balance and fell about four feet onto a scaffold, landing on his back. He reported to his supervisor that he had fallen and was in pain. He was able to finish his shift that afternoon. Approximately two days later, he went to the emergency room because he was still in pain. At work the next Monday, Nunn *1055 was sent for treatment where he received pain medication and was sent back to work. Nunn was able to work after this accident, but he continued to experience pain in his back while he was working.
On March 28, 2000, Nunn attempted to pick up a channel iron that weighed approximately 125 pounds. As he stood up with the channel iron, he felt a "sharp pain shoot down in [his] back and [his] leg." He informed his supervisor about the pain, and the supervisor took him for treatment. Nunn then began a course of treatment that required him to go to work for approximately one hour and then to go to physical therapy three days per week. On the days that he was not in therapy, Nunn would sweep the floors at work because he was in pain and was not able to do his normal job. The record is not clear how long Nunn received therapy; sometime after completing the therapy program, Nunn returned to his normal job. He testified that he was not able to do his job as well as he had before the injury and that his co-employees had to help him perform certain job tasks.
On July 5, 2000, Nunn was laid off by Fosbel because Gulf State Steel had entered bankruptcy. It appears that after approximately one month of being off work Nunn secured employment loading trucks for another company; he was required to get clearance from a doctor in order to work. Nunn scheduled an appointment with a neurosurgeon, Dr. James White. Dr. White examined Nunn on November 15, 2000. Dr. White determined that Nunn had a nerve-root irritation and ordered a lumbar MRI. That test showed that Nunn had a "small central herniation at lumbar 5." Nunn also had an EMG that showed an S1 radiculopathy, which, Dr. White determined, meant that Nunn had a nerve-injury pattern. Dr. White started Nunn on a course of conservative therapy. Between November 2000 and January 2001, Dr. White tried to treat Nunn's condition with epidural steroid injections. That course of treatment was ineffective.
Dr. White saw Nunn again on January 24, 2001, and Nunn had a decreased ankle jerk, indicative of a nerve injury. Dr. White recommended surgery, which was approved by Fosbel's workers' compensation insurance carrier in June 2001.
After surgery, on August 6, 2001, Dr. White determined that Nunn had reached maximum medical improvement and assigned Nunn a 10% permanent whole-body impairment. Nunn did not return to Dr. White until May 2002. When Nunn did return he complained of excruciating pain in the same general area of his back and leg. Dr. White ordered another lumbar MRI and a myelogram. Both tests were negative. Dr. White ordered a functional capacity examination ("FCE"). Nunn completed an FCE at Rehab Partners, P.C., in 2002. The FCE report indicated that Nunn gave a good effort; he was given restrictions of lifting and carrying no more than 20 pounds. Dr. White opined that the FCE results were accurate, but he stated that they did not take into account Nunn's severe pain. Because of Nunn's complaint of severe and chronic pain, Dr. White opined that Nunn was 100% disabled. Dr. White testified that he had no reason to disbelieve Nunn's report of severe pain. Nunn was prescribed a mild narcotic, Lortab, and was referred to a pain-management specialist.
Dr. Ronald Moon, a pain-management specialist, began treating Nunn on April 7, 2003. After examining Nunn, Dr. Moon found that there was "some evidence of chronic right low back and some leg pain." Dr. Moon ordered a second EMG. This EMG was taken on April 9, 2003, and showed no evidence of nerve damage. Dr. Moon testified that even with a normal *1056 EMG a person still could experience pain but that the pain would not be caused by nerve-root damage. Dr. Moon also ordered a second FCE, which Nunn was unable to complete; the report of that FCE indicated that Nunn may have given a "self-limiting effort." Dr. Moon testified that even though a person was self-limiting that did not mean he was not giving a sincere effort but rather that the individual may fear another injury or may be in pain. Further, Dr. Moon ordered a high-resolution infrared-imaging test. This test measures and records thermal gradients spontaneously emitted from the body. The result of this test indicated an "Abnormal Infrared Imaging Study of uncertain significance. Elevated emissions in the right side of the lower buttocks and right leg support patient's pain complaint." Dr. Moon evaluated Nunn's history and determined that there was no objective evidence of nerve damage but that Nunn did have chronic recurrent low-back and leg pain. Dr. Moon determined that Nunn could work in jobs that required medium exertion but not in those that required heavy exertion. Dr. Moon agreed that Nunn had a 10% impairment to the body as a whole. Dr. Moon did testify that Nunn would not be able to do the type of work he had done in the past, but he stated that Nunn could lift up to 50 pounds during one-third of the working day. Dr. Moon came up with the 50-pound limit based on the results of Nunn's first FCE, in which Nunn was capable of lifting 30 pounds with one hand, and on the fact that Nunn was self-limiting in the second FCE. Dr. Moon prescribed Robaxin, a muscle relaxer, and one Lortab, 7.5 milligrams, per day. According to Dr. Moon, those two medications can cause drowsiness in patients.
Nunn testified that before he was injured he was very active and enjoyed participating in golf, fishing, and softball up to four nights per week. Because of his injury, Nunn had to sell his two bass boats and is not able to golf or play softball. Nunn also testified that he is unable to do housework or shop for groceries and that his father or his roommate has to do those tasks for him. He testified that the medications make him "feel like I'm drowsy or just like I'm in a coma. . . ."
Joseph Hubbard, Nunn's roommate, testified that Nunn was a different person after the injury. Hubbard testified that Nunn was no longer engaged in the activities he used to do and that he was unable to perform any household chores. Hubbard also testified that Nunn was unable to sleep for more than a few hours per night and that Nunn constantly sat down and got back up and was unable to find a position in which he is comfortable.
Nunn's father testified that his son is unable to do the things he had done before the injury, such as mowing the yard and helping to clean the house.
Nunn offered the testimony of Jo Helen Spalding, a licensed professional counselor and vocational consultant. Spalding met with Nunn on October 12, 2001. She testified that based on Nunn's limited work history he did not have any transferrable skills for a less physically demanding vocational alternative. After reviewing the results of the first FCE, Spalding opined that Nunn had a 65-70% vocational loss. Spalding then testified that after reviewing Dr. White's report she felt that Nunn was 100% vocationally disabled because of pain. Spalding testified that she had not provided a job placement for Nunn and had not reviewed Dr. Moon's records. She also testified that if Nunn could return to work involving medium exertion his vocational loss would be 60-75%. Spalding did not believe that Nunn was a good candidate for vocational retraining or rehabilitation.
*1057 Fosbel offered the testimony of Dr. Richard Hark, a psychologist and vocational consultant. Dr. Hark met with Nunn on April 11, 2003. Dr. Hark opined that Nunn had a vocational loss of 50-53%. Based on a review of The Gadsden Times, a newspaper of general circulation in the county where Nunn resides, Dr. Hark felt there were several jobs in the Gadsden area where Nunn could work. Those jobs were entry level and would pay about 50% less than Nunn's previous salary; Dr. Hark based his 50-53% vocational-disability determination on those jobs. However, Dr. Hark did admit that when he factored in Dr. White's opinion he agreed that Nunn is 100% disabled and has no transferrable skills. He further admitted that the medications that Nunn was prescribed would appear in a drug screen and that if Nunn had to tell an employer that a doctor said he should not work then no employer would be willing to hire him.
On appeal, Fosbel argues that there was no objective evidence, much less substantial evidence, that Nunn was 100% permanently and totally disabled.
We apply a presumption of correctness to a trial court's findings of fact, including its determination of disability. Where ore tenus evidence is presented to the trial court, the court's findings of fact based on that evidence are presumed correct and will not be disturbed on appeal unless they are clearly erroneous and without supporting evidence. Mutual Sav. Life Ins. Co. v. Hogue, 693 So.2d 530 (Ala.Civ.App.1997). The test for permanent total disability is the inability to perform one's trade and to find gainful employment. Michelin North America, Inc. v. Hamby, 722 So.2d 770 (Ala.Civ.App.1998). The court must apply a two-pronged test in determining whether a permanent total disability exists: the employee must be found to be incapable of returning to his trade, as well as incapable of being retrained for gainful employment. Id. "Total disability does not mean an entire physical disability or absolute helplessness." 722 So.2d at 773. The court is not required to make a specific finding that an employee cannot be retrained for gainful employment, because such a finding is implicit when the trial court concludes that the employee is permanently and totally disabled. Star Rails, Inc. v. May, 709 So.2d 44 (Ala.Civ.App.1997). This court has stated that "`[g]ainful employment means employment similar in remuneration to that earned prior to the injury. Implicit in this is that the gainful employment sought to be restored must be "suitable." By "suitable" we mean employment which is compatible with the employee's pre-injury occupation, age, education, and aptitude.'" Trans Mart, Inc. v. Brewer, 630 So.2d 469, 471 (Ala.Civ.App.1993), quoting Ex parte Beaver Valley Corp., 477 So.2d 408, 412 (Ala.1985). It is the duty of the trial court to make some determination as to the extent of disability. Hamby, 722 So.2d at 773. In making that determination, the trial court is not bound by expert testimony but must consider all the evidence, including its own observations, and interpret that evidence to its own best judgment. Burden v. Huckaba, 708 So.2d 199 (Ala.Civ.App.1997). The court, in determining disability, may also consider the employee's subjective complaints of pain. Hamby, 722 So.2d at 773.
Fosbel points to the results of the two FCEs and the second EMG as objective determinations concerning Nunn's condition. The first EMG showed signs of an SI radiculpathy. Although the second EMG was negative, Dr. White testified that a person can have a normal EMG "and still have terrible pain." Dr. Moon shared this opinion. The first FCE indicated that Nunn was able to perform light-duty *1058 work. The second FCE was terminated early because of a "self-limiting effort." However, as Dr. Moon explained, a "self-limiting effort" does not mean that a patient is being less than sincere but rather that the patient may fear another injury or a reaggravation of the previous injury.
There was also testimony from two vocational experts. Dr. Hark believed that Nunn had only a 50-53% vocational disability. However, Dr. Hark did agree that based on Nunn's complaints of pain he would be 100% disabled. Further, Dr. Hark testified that an employer would be very unlikely to hire Nunn if they knew of his injury and the recommendation of Dr. White that Nunn should not work.
We cannot say that the trial court abused its discretion in finding Nunn to be 100% permanently and totally disabled.
Nunn cross-appeals, arguing that the trial court erred in its denial of his petition for treatment by a new or additional physician for pain management pursuant to § 25-5-77(a), Ala.Code 1975.
Section 25-5-77(a), Ala.Code 1975, provides, in part:
"If the employee is dissatisfied with the initial treating physician selected by the employer and if further treatment is required, the employee may so advise the employer, and the employee shall be entitled to select a second physician from a panel or list of four physicians selected by the employer."
This court has noted:
"In determining who the treating physician will be in a workmen's compensation case, the drafters of the applicable Alabama statute took into consideration two desirable values. Professor Larson describes the values as follows:
"`The first is the value of allowing an employee, as far as possible, to choose his own doctor. This value stems from the confidential nature of the doctor-patient relation, from the desirability of the patient's trusting the doctor, and from various other considerations. The other desirable value is that of achieving the maximum standards of rehabilitation by permitting the compensation system to exercise continuous control of the nature and quality of medical services from the moment of injury. If the injured employee has completely unlimited free choice of his doctor, in some cases he may select a doctor, because of personal relationship or acquaintance, who is not qualified to deal with the particular kind of case, or who at any rate is incapable of providing service of the quality required for the optimum rehabilitation process.'"
City of Auburn v. Brown, 638 So.2d 1339, 1340-41 (Ala.Civ.App.1993)(quoting 2 A. Larson, The Law of Workmen's Compensation § 61.12(b), at 10-790 (1989)). The general rule in Alabama has long been "`that [workers'] compensation statutes will be liberally construed to effect their beneficent purposes.'" Ex parte Steelcase, Inc., 893 So.2d 429, 432 (Ala.2004) (citation omitted).
Dr. White initially referred Nunn to a pain-management specialist in the Gadsden area. Fosbel's workers' compensation insurance provider gave Nunn authorization to see that pain-management specialist with the caveat that it was a "one-time only" visit; if further treatment was needed, then Nunn would be required to see a pain-management doctor in the insurance company's network. After the one-time treatment by the Gadsden pain-management specialist, the insurance company required Nunn to be treated by Dr. Moon. Nunn was not satisfied with Dr. Moon's treatment and requested that Fosbel allow him to choose a new physician from a *1059 panel of four as provided in § 25-5-77(a); Fosbel denied that request.
Dr. Moon practices medicine in Birmingham, which requires Nunn to travel from Gadsden to Birmingham to get treatment. Nunn testified that he cannot ride in a motor vehicle for an extended period of time and that he has to get out of the vehicle and stretch several times during the trip to and from Birmingham. The travel that is required to see Dr. Moon increases Nunn's back pain; he is considered 100% permanently and totally disabled because of pain.
This is Nunn's first request for a panel of four physicians pursuant to § 25-5-77(a). Nunn has a statutorily granted right to be provided with a panel of four physicians from which to choose once he became dissatisfied with his treating physician. We reverse the trial court's order insofar as it fails to require Fosbel to provide Nunn with a panel of four pain-management physicians from which Nunn may select a new treating physician, and we remand the case for the trial court to enter an order consistent with this opinion.
APPEALAFFIRMED.
CROSS-APPEALREVERSED AND REMANDED.
PITTMAN, J., concurs specially, which CRAWLEY, J., joins.
THOMPSON and MURDOCK, JJ., concur in the result, without writing.
PITTMAN, Judge, concurring specially.
On the authority of Ex parte Brookwood Medical Center, Inc., 895 So.2d 1000 (Ala.Civ.App.2004), I concur; however, in my view, the distance between an employee's home and the office of a treating physician selected by the employer pursuant to the Alabama Workers' Compensation Act is immaterial to the employee's right to request a "panel of four" under Ala.Code 1975, § 25-5-77(a).
CRAWLEY, J., concurs.