YATES, Presiding Judge.
Charles E. Horton sued Griffin Wood Company, Inc. (“Griffin Wood”), on December 8, 2000, seeking workers’ compensation benefits and alleging that he had suffered an injury to his.back during the course of his employment with Griffin Wood that rendered him permanently and totally disabled. Griffin Wood answered the complaint on February 14, 2001, denying the existence of an employment relationship and raising as a defense the farm-labor exception to workers’ compensation liability provided in § 25-5-50(a), Ala.Code 1975. Following an ore tenus proceeding, the trial court, on January 28, 2002, entered an order finding that Horton had been employed by Griffin Wood; that he had injured his back during the course of his employment; and that he is permanently and totally disabled as a result of the back injury. Griffin Wood appeals.
This case is governed by the 1992 Workers’ Compensation Act. This Act provides that an appellate court’s review of the *1129 standard of proof and its consideration of other legal issues shall be without a presumption of correctness. § 25 — 5—81(e)(1), Ala.Code 1975. It farther provides that when an appellate court reviews a trial court’s findings of fact, those findings will not be reversed if they are supported by substantial evidence. § 25-5-81(e)(2). Our supreme court “has defined the term ‘substantial evidence,’ as it is used in § 12-21-12(d), to mean ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996), quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). This court has also concluded: “The new Act did not alter the rule that this court does not weigh the evidence before the trial court.” Edwards v. Jesse Stutts, Inc., 655 So.2d 1012, 1014 (Ala.Civ.App.1995).
Griffin Wood argues on appeal that Horton was performing farm labor for an entity known as G & H Farms and that, therefore, he is not covered by the Workers’ Compensation Act, pursuant to § 25-5 — 50(a), Ala.Code 1975. Horton argues that Griffin Wood is estopped to deny workers’ compensation coverage for him, or, in the alternative, that Griffin Wood effectively elected workers’ compensation coverage for him.
Corin Harrison owns Griffin Wood and G & H Farms. Griffin Wood is in the business of harvesting, buying, and selling timber. G & H Farms is a farming operation in the business of raising cattle and catfish. G & H Farms has two employees who work on the farm tending the cattle and the catfish. Harrison testified that the two businesses are separate entities and that each business has separate bank accounts, charge accounts, and financial statements. Harrison also stated that he files separate tax returns for the two businesses.
Horton testified that he was 41 years old, has an llth-grade education, and that he has obtained his GED certificate. He stated that after his brother had informed him that Harrison was looking for someone to work on his cattle and catfish farm, he met with Harrison to discuss the job and was told that he would be working for Griffin Wood “[taking] care of the catfish and cattle side of the operation.” Horton began working on the cattle and catfish farm on February 3, 1999. His job duties included feeding the cattle and the catfish; cheeking the oxygen levels in the catfish ponds; treating the catfish ponds with chemicals and minerals; repairing fences; roping calves; tagging, treating, and castrating the cattle; clearing pastures; and cutting and bailing hay.
Horton testified that he had received his paychecks and his W-2 forms from Griffin Wood. Additionally, Griffin Wood had provided Horton with a farm truck, fuel, a radio, and a cellular telephone. Horton testified that he had been also subject to Griffin Wood’s drug-testing policy. He stated that he had charged goods for the farm to the Griffin Wood accounts. Horton’s testimony also indicated that Harrison had met with the Griffin Wood supervisors every morning to discuss the daily operations of that business and that, after the Griffin Wood supervisors had been dismissed, Harrison would then meet with Horton to discuss the daily operations of the cattle and catfish farm. Horton testified that he had worked full-time on the farm and that he had never worked in the woods harvesting timber.
Harrison testified that Horton had been employed by G & H Farms “to look after my cows and my catfish.” He stated that 100 percent of Horton’s job duties entailed working with the cattle and the catfish. *1130 Harrison acknowledged that Horton had received his paychecks and W-2 forms from Griffin Wood and that the two G & H Farms employees were on the Griffin Wood payroll as a matter of convenience. Harrison testified that Griffin Wood had provided Horton with a farm truck, fuel, a radio, and a cellular telephone. He also stated that G & H Farms had reimbursed Griffin Wood for Horton’s salary and other expenses incurred by Griffin Wood on behalf of G & H Farms.
Horton testified that on Wednesday, April 19, 2000, he and Boise Rutledge, the other farm employee, were preparing to “work” the cattle by setting up a portable head chute. Horton stated that as he and Rutledge were moving the head chute into place he felt something “burn in [his] back” and that “something kind of caught in his back.” Horton stated that his back “bothered” him while he was “working the cows.” Horton, Harrison, and Rutledge had been “working the cows” by applying a “wormer” medication to the cattle. Horton stated that when they had completed applying the medication to the cattle he knelt down to pour the medication from the applicator back into the bottle. He stated that when he stood “it felt like someone stuck a knife in my tail” and he collapsed to the ground. Horton stated that Harrison witnessed the incident and asked him what was wrong and that he replied “my back is killing me.” Harrison stated that Horton kneeled down and then grunted. He stated that he asked Horton what was wrong and that Horton replied that he had a “catch” in his back.
Horton continued to work the remainder of the week, primarily cutting hay, and he did not inform Harrison that his back was injured. Horton testified that on the following Saturday night, while he was walking out on his porch to light his barbecue grill, something caught in his back and he went down to his knees in excruciating pain. He was transported to the hospital by ambulance. Horton was subsequently diagnosed and treated for ruptured discs at the L4-L5 and L5-S1 levels and underwent two surgeries on his back. He testified that he is in constant pain and that he has not worked since April 22, 2000. The first report of the injury was completed on a form used for Griffin Wood employees.
The provisions of the Workers’ Compensation Act do not apply to the “employer of a farm laborer.” § 25-5-50(a), Ala.Code 1975. This court has stated:
“ ‘[I]t is generally recognized that the exemption of farm labor from workmen’s compensation coverage is construed according to the character of the work regularly performed by the employee, not according to the nature of the employer’s business. See 1C A. Larson, The Law of Workmen’s Compensation § 53.00 (1982). In other words, it is the nature of the work the employee does that determines whether he is a “farm laborer” for purposes of Ala.Code § 25-5-50 (1975).’ ”
JWM, Inc. v. Raines, 779 So.2d 247, 248 (Ala.Civ.App.2000), quoting Patrick v. Miller, 440 So.2d 1096, 1097 (Ala.Civ.App.1983). It is undisputed that Horton regularly performed farm-related labor during the course of his employment; therefore, the provisions of the Workers’ Compensation Act are not applicable to Horton, and he is not entitled to coverage under the Act, pursuant to § 25-5-50(a), Ala.Code 1975.
Horton relies upon a general rule of estoppel applicable to the area of insurance law and argues that, because he was listed on the Griffin Wood payroll and because the Griffin Wood employees were covered by workers’ compensation insurance, Griffin Wood is estopped to deny him- *1131 workers’ compensation coverage. The rule that Horton relies upon is stated as follows:
“ ‘There is a general rule of estoppel extant in the field of insurance law. This rule prohibits an insurer in employer’s liability, who collects premiums based upon a payroll listing, from denying liability as to an employee who was included therein. See Couch on Insurance 2d § 44:126 (1963 Ed.).’ ”
Ala-Miss Enters., Inc. v. Beasley, 446 So.2d 644, 646 (Ala.Civ.App.1984), quoting Employer’s Ins. Co. of Alabama v. Lewallen, 293 Ala. 574, 577, 307 So.2d 689, 691 (1975).
In Beasley, Beasley worked as a woodcutter for Hamilton and was injured when a tree fell on him, breaking his leg. Hamilton had been hauling wood exclusively to Ala-Miss Enterprises for approximately nine months, except for several loads that he had hauled to another purchaser. It was undisputed that Hamilton had hired Beasley and had supervised his work. There was no contract between Hamilton and Ala-Miss Enterprises, and Ala-Miss Enterprises could accept or reject any timber tendered by Hamilton. However, Ala-Miss Enterprises had deducted from the price it paid for every cord of wood it accepted from Hamilton a certain amount to pay workers’ compensation insurance premiums for Hamilton and Beasley. The trial court concluded that Beasley was an employee of Ala-Miss under the Workers’ Compensation Act and awarded him benefits. Id.
On appeal, this court, by way of analogy to the general rule of estoppel stated above, held that “Ala-Miss, by deducting for workmen’s compensation from the monies owed Hamilton, elected to treat Beasley, Hamilton’s ‘employee,’ as its employee for workmen’s compensation coverage.” Beasley, 446 So.2d at 646. In reaching its conclusion, this court specifically noted that Ala-Miss Enterprises had deducted the workers’ compensation insurance premiums from the price it paid per cord of wood to Hamilton; that it could reasonably be inferred that the premiums had been deducted to cover the people in the woods cutting and hauling the timber; that Beasley had been cutting timber to be hauled to Ala-Miss Enterprises; and that, therefore, Beasley would have been covered under Ala-Miss Enterprises’s workers’ compensation insurance coverage by virtue of Ala-Miss Enterprises’s having deducted the premiums for that purpose. This court specifically limited its holding to the peculiar facts of that case. Beasley, at 646-47.
The facts of this case are distinguishable from those in Beasley. Here, Horton was listed on the Griffin Wood payroll, and the Griffin Wood employees were provided with workers’ compensation insurance coverage. However, Griffin Wood’s workers’ compensation insurance premiums were not calculated based on the number of people on the payroll, rather, the premiums were calculated on a per-cord-of-wood-harvested basis. Harrison testified as follows:
“Q. You testified earlier that you had workers’ compensation for Griffin Wood Company, and Mr. Horton was on the payroll for Griffin Wood Company; is that correct?
“A. That’s right.
[[Image here]]
“Q. Are you testifying that there is coverage under the Griffin Wood Company policy for an employee that works on the farm?
“A. No. It’s my understanding that the worker’s comp has taken the position that it was farm laborer and that my premium — L pay my worker’s comp premium on a per cord basis. And so therefore [Horton] wasn’t producing any *1132 wood, so therefore there was no premi--um paid on him.”
Harrison testified as follows in response to questioning by the trial court:
“Q. Do you know how [the] premium is calculated by the insurance company? You had some testimony in response to Mr. Summerford’s question with regard to [the] premium paid on a cord basis. But do you personally know that, or is that something that somebody at the insurance company told you when you called them?
“A. It’s on a per cord basis.
“Q. My question to you is how do you know that?
“A. Well, what we do is get a quote every year and not just from this particular company. And at one time they went on payroll, strictly payroll. And then I would say five or six years ago they started back computing it on a per cord basis. And our monthly premium — if I haul 2,000 cords in the month of November; that’s what my premium is based on for folks in the woods. If I haul 2,000, -2,000 times $1.10, $.95, whatever it might be.
“Q. So then what you’re telling me is that it doesn’t matter whether you have five employees or five hundred employees at Griffin Wood Company. Your premium for workman’s comp coverage is determined by the cords of wood that you have produced on a monthly basis?
“A. Right.”
It can reasonably be inferred that the workers’ compensation insurance premiums were paid on behalf of those employees that worked in the woods cutting and hauling the timber. It is undisputed that Horton worked full-time in the cattle and catfish operation and that he did not work in the woods. Thus, no premiums were paid on behalf of Horton; therefore, he' is not covered by the Griffin Wood workers’ compensation insurance.
Horton also cites Lewallen supra, 293 Ala. 574, 307 So.2d 689, in support of his estoppel argument. In that case, Lewallen owned two construction companies — Omar Construction Company and Dome Construction Company. Those two businesses were later incorporated into one company, and the workers’ compensation insurance carrier collected premiums based on the monthly size of the total payroll of the two businesses that had been incorporated into one company. The workers’ compensation insurance policy, however, listed only one of the preincorporation businesses, and the policy was never changed to reflect the incorporation of the two businesses into a singlé entity. The employee, who had been employed by the preincorporation business that was not listed on the policy, was injured during the course of his employment. The insurance carrier denied any liability, arguing that the employee was not employed by the company named as the insured. The trial court entered a judgment declaring that the employee was covered under the policy. - Relying upon the general rule of estoppel in the area of insurance law, the supreme court affirmed the trial court, based, in part, on the fact that the employee’s salary was used to calculate the workers’ compensation insurance premium." Lewallen, supra. Again, the facts of Lewallen are distinguishable from the facts of this case. In Lewallen the employee’s salary was used to calculate the workers’ compensation insurance premiums. In the present ease, although Horton was named on the Griffin Wood payroll, the workers’ compensation insurance premiums were calculated on a per-cord basis, not on the number of employees on the payroll.
Accordingly, we conclude that the general rule of estoppel relative to the field of *1133 insurance law is not applicable to estop Griffin Wood from denying workers’ compensation insurance coverage for Horton.
Relying upon Smith v. Thrower Nursery, Inc., 360 So.2d 741 (Ala.1978), Horton also argues that Griffin Wood effectively elected workers’ compensation coverage for him. We disagree. An employer of a farm laborer may elect to become subject to the provisions of the Workers’ Compensation Act by “filing written notice thereof with the Department of Industrial Relations, a copy thereof to be posted at the place of business of the employer.” § 25-5-50(a), Ala.Code 1975. Our supreme court stated in Smith:
‘Where an employer has clearly manifested his intent to elect coverage and the concerned parties have at all times acted as though coverage was in effect, these actions should control. As Prof. Larson points out in his treatise on workmen’s compensation, ‘[WJhen the question is what will amount to affirmative election of coverage, most courts are less exacting as to formalities and will accept any realistic evidence of intent to accept coverage, such as actual payment of compensation or the taking out of workmen’s compensation insurance.’ 2A A. Larson, The Law of Workmen’s Compensation, § 67.10 (1976). While a single act of taking out insurance or paying a claim may not be sufficient evidence of intent, a consistent pattern of behavior on the part of the employer, his employees, and the Department of Industrial Relations will suffice.”
360 So.2d at 743. In Smith our supreme court affirmed the trial court’s judgment holding that an employer had elected workers’ compensation coverage for a farm laborer where the employer had filed notice of its intent to come under the provisions of the Act with the Department of Industrial Relations; the employees had been notified that they were covered by the Act, and notice of such coverage had been posted on an employee bulletin board; the employer had paid premiums for coverage and also had paid eight separate workers’ compensation claims; and the employer, the insurer, and the Department of Industrial Relations had all acted as if an effective election of coverage had occurred. Smith, supra.
In the present ease, there was no evidence presented indicating that G & H Farms or Griffin Wood had elected coverage for the farm employees. There was no notice of election filed with the Department of Industrial Relations electing coverage. There was no evidence indicating a consistent pattern of behavior on the part of the parties or others indicating an election of coverage, i.e., there was no evidence indicating that G & H Farms or Griffin Wood had previously paid premiums for workers’ compensation coverage or had paid any workers’ compensation claims on behalf of the farm employees.[1] There was evidence presented indicating that a first report of injury had been prepared on a Griffin Wood form and had been submitted to the insurer; however, this alone will not suffice to effectively elect coverage under the Workers’ Compensation Act.
Accordingly, after reviewing the record, we conclude that the trial court erred in determining that Horton was covered under the provisions of the Workers’ Compensation Act. Therefore, we reverse the trial court’s judgment and remand this *1134 case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.

. As discussed above, Griffin Wood had paid insurance premiums for its employees; however, those premiums were calculated on a per-cord-of-wood basis and did not include a premium for Horton, whose sole duties were farm-related and who did not work in the woods harvesting the timber.