Frank Dueitt appeals from a judgment in favor of Scott Paper Company in his action against Scott Paper to recover workers' compensation benefits that he sought as the result of a hearing loss he alleged he had suffered on the job. We affirm.
Following a hearing, the trial court, in a comprehensive and well-reasoned opinion, denied benefits to Dueitt. The pertinent portions of that opinion are quoted here:
 "This case was duly called for trial on November 30, 1995. The Court, sitting without a jury, having heard and understood the testimony of the witnesses and having observed their demeanor, the evidence in this case having been produced in open court, and having considered the same as well as the pleadings filed herein, stipulations of the parties made in open court, the depositions of the expert witnesses and the medical records submitted by counsel and the oral argument made by counsel, the Court now states its findings of fact, conclusions of law and judgment to be as follows:
 "FINDINGS OF FACT AND CONCLUSIONS OF LAW
 "1. This is an action brought by Plaintiff, Frank Dueitt, pursuant to the Alabama Workers' Compensation Act, §§ 25-5-1 et seq., Code of Alabama (1975), seeking compensation and medical benefits for hearing loss allegedly sustained by Plaintiff as a result of exposure to occupational noise during his employment career with Defendant, Scott Paper Company.
 "2. Dueitt was employed with Scott Paper Company for nearly 32 years, from April 2, 1961 until March 1, 1993, primarily as a welder. Dueitt testified that between late 1964 and 1986, he worked in various areas of the Scott Paper Company mill in Mobile, Alabama, performing his welding tasks wherever he was assigned to work on any given day or week. In 1986 Dueitt received 'multicraft' training, after which time he worked not only as a welder but also performed millwright work, pipefitting and other jobs. Between 1987 and his retirement in 1993, Dueitt spent most of his time working in the area known as the wood yard.
 "3. This claim stems from Dueitt's allegations that he was exposed to harmful levels of occupational noise throughout his career with Scott Paper Company. Although he did not work constantly in loud noise areas, Dueitt described various types of machinery and equipment that exposed him to loud noises on a regular basis. Prior to his employment with Scott Paper Company, Dueitt was exposed to noise from rifle fire during his service in the U.S. Army, and from industrial sources of noise while he was employed in several shipyards during the 1940's and 1950's. Dueitt has also been exposed to noises from gun fire as a result of hunting activities for much of his life.
 "4. Dueitt acknowledged that he used hearing protection in the form of earmuffs when he started working as a welder for *Page 42 
Scott Paper Company in 1964. Such hearing protection could not be used, however, whenever Dueitt was actually welding, because the earmuffs could not be worn at the same time as the welding mask. Thus, Dueitt often worked without hearing protection during the first ten years of his employment with Scott Paper Company.
 "5. Scott Paper Company eventually instituted a hearing conservation program at its Mobile mill, which came into effect during the early 1970's according to Dueitt. This program required all employees to utilize hearing protection whenever they were exposed to high noise levels at work. This was a mandatory rule, and Scott Paper Company provided hearing protection in the form of earmuffs and ear plugs. As part of the program, Scott Paper Company began posting signs throughout its mill designating high noise areas.
 "6. In accordance with the requirements of the hearing conservation program, Dueitt said he began using hearing protection on a regular and consistent basis in the early 1970's. The use of ear plugs allowed Dueitt to use hearing protection at all times, even while wearing a welding mask. Dueitt stated that he used hearing protection in posted high noise areas, but also in those areas that were not posted but which he thought exposed him to loud noises. Dueitt said he used his hearing protection whenever necessary all the way up until the date of his retirement.
 "7. Dueitt explained that there were brief occasions when he did not wear his hearing protection in high noise areas. He said there were instances when he either forgot to put his hearing protection on, or there were times when he had to remove his hearing protection to carry on brief conversations. He acknowledged, however, that these exceptions to his generally consistent use of hearing protection lasted only for a few minutes. He said he never worked in high noise areas for any extended period of time without his hearing protection. According to Dueitt, if he took his hearing protection off, he always put it back on within a few minutes, and he always wore his hearing protection when he was working around machinery he considered to be loud.
 "8. As part of the Scott Paper Company hearing conservation program, Dueitt underwent several hearing tests during his career. These tests were conducted by registered nurses employed by Scott Paper Company, and Dueitt acknowledged that he was regularly reminded to use hearing protection following the hearing tests and at safety meetings. The employment records submitted into evidence show hearing test results from 1983, 1988 and 1989. The documents further show that even as late as 1990, Dueitt was advised by Scott Paper Company as to changes in his hearing and reminded to use hearing protection. Dueitt stated that he first became aware that he was experiencing trouble with his hearing in the mid 1970's, and he testified that there were occasions over the course of his career when he would leave work with ringing in his ears.
 "9. Each of the parties presented expert medical testimony by means of deposition. Dueitt submitted the testimony of Dr. Randall Harrington, an otolaryngologist who specializes in head and neck surgery. Scott Paper Company submitted the deposition testimony of Dr. Joseph Sataloff, an otologist who specializes in diseases of the ear and occupational hearing loss.
 "10. Both of these medical experts expressed the opinion that Dueitt suffers from sensioneural hearing loss, caused at least in part by exposure to occupational noises at Scott Paper Company. This agreement between the medical experts, however, only applies to the early portion of Dueitt's career. Dr. Sataloff testified that an employee will sustain a maximum amount of occupational hearing loss within the first ten years of his employment and exposure to consistent occupational noise. Thus, in light of the fact that Dueitt began working for Scott Paper Company as a welder in 1964, as well as the fact that Dueitt began using regular and consistent hearing protection in the early 1970's, Dr. Sataloff concluded that Dueitt sustained all of the occupational hearing loss that he would ever sustain in this job well before *Page 43 
his hearing was tested in 1983. At that time, according to the American Medical Association Guidelines for hearing impairment, Dueitt had a hearing loss of 11.5%. Dr. Sataloff feels that any worsening of Dueitt's hearing loss since 1983 has been the result of factors other than occupational noise, such as aging, cardiovascular disease and non-occupational noise. Dr. Harrington's opinion differs to the extent that he feels Dueitt probably continued to suffer hearing loss that was caused or contributed to by occupational noise throughout his career at Scott Paper Company. Dr. Harrington testified that Dueitt suffered from a 36.3% hearing impairment as of the time an audiogram was conducted in February, 1994. This is the test result upon which Dueitt relies in bringing this claim.
 "11. Under the provisions of the Alabama Workers' Compensation Act, Dueitt is seeking compensation and medical benefits based upon his current level of hearing loss. Scott Paper Company has raised several defenses to this claim, including one based on the appropriate statute of limitations. Based upon all of the evidence presented by the parties at trial, this Court finds that it cannot award Dueitt benefits for a compensable hearing loss because this claim has long since been barred by the statute of limitations.
 "12. The statute of limitations applicable to this claim is found in § 25-5-117, Code of Alabama
(1975). The statute requires that any claim for hearing loss must be brought within two years of the 'date of injury,' which is defined as the date of last exposure to the hazards of the disease. This claim was filed on May 24, 1994. In light of all the evidence, this Court finds that the claim was not filed within the statute of limitations, and that Dueitt has not been exposed to a hazard from occupational noise for many years. The hazard complained of in a hearing loss case is exposure to occupational noise that is sufficient both in intensity and duration to potentially cause damage to one's hearing. In other words, an employee must be exposed to noise which is loud enough, for a long enough period of time, before he is exposed to any hazard from occupational noise.
 "13. Certain facts are clear from the evidence. Dueitt worked for Scott Paper Company for nearly 32 years, and he complains that he was exposed to loud occupational noises for most of that period. Dueitt admits that he knew he was having trouble with his hearing as early as the mid 1970's, and he testified that the noises at work would cause ringing in his ears. The medical experts, although they may disagree as to when occupational noise stopped contributing to Dueitt's hearing loss, agree that Dueitt suffered hearing loss at least in part caused by occupational noise during the early years of his employment with Scott Paper Company. Several times during the 1980's, and as late as 1990, Dueitt had his hearing tested at Scott Paper Company as part of the hearing conservation program. He was advised as to the changes in his hearing, as measured by these tests, and he was regularly reminded to use his hearing protection. Although Dueitt may not have used consistent hearing protection during the early years of his employment, he testified that he used hearing protection on a regular and consistent basis during the last twenty years of his employment.
 "14. These facts demonstrate to the Court that Dueitt has suffered from hearing loss for many years, that he has been aware of his hearing loss since the mid 1970's, that he has known of the potential relationship between occupational noise and his hearing loss, and that he protected himself from the hazards of occupational noise during the latter two decades of his employment. The Court also notes that Dueitt protected his hearing with regard to occupational noise, but did not protect his hearing, or could not protect his hearing, from other factors causing hearing loss such as aging, cardiovascular problems and non-occupational noise.
 "15. The Court does not view this application of the statute of limitations as a hardship on Dueitt. The evidence shows that Dueitt has known for many years about his gradually increasing hearing loss. Such knowledge charged him with a duty *Page 44 
to assert any claim for hearing loss in a timely fashion.
 "16. Dueitt has argued that the statute of limitations should be interpreted as running two years from the date of last exposure to loud noises, regardless of the duration of the exposure. The Court considers this interpretation both unrealistic and unfair to employers. If all that is required to extend the limitations period is a brief exposure to loud noise, then any potential claimant can ignore or delay a potential hearing loss claim, despite knowledge of an existing hearing loss. Even if a claimant has not been exposed to loud noises in an occupational setting for many years, that claimant could in effect resurrect a stale claim simply by means of a brief exposure to loud noise. The Court cannot agree that this is the appropriate application of the statute of limitations in this case.
 "17. Based upon the foregoing, the Court concludes upon the facts and the law that the Plaintiff has shown no right to relief, and that this claim is time barred by the applicable statute of limitations."
This court's review, under the applicable law, is governed by the substantial evidence standard. See Carufel v. Hub Trucking,Inc., 687 So.2d 200 (Ala.Civ.App. 1996). We will not reverse a trial court's findings of fact if they are supported by substantial evidence, § 25-5-81(e)(2), Ala. Code 1975, and we do not weigh the evidence before the trial court. Edwards v. JesseStutts, Inc., 655 So.2d 1012 (Ala.Civ.App. 1995). The trial court's conclusions regarding legal issues carry no presumption of correctness on appeal. § 25-5-81(e)(1), Ala. Code 1975.
This court has examined the record and the briefs of the parties. As the trial court's opinion demonstrates, substantial evidence exists to support its findings of fact regarding the circumstances surrounding Dueitt's hearing loss and the date of his "last exposure to the hazards of the disease in the employment of the employer." § 25-5-117, Ala. Code 1975. Furthermore, we agree with the trial court's determination that to be exposed to the "hazards of the disease" in a hearing loss case, the employee must be exposed to occupational noise that is sufficient both in intensity and duration to have the potential to cause damage to the employee's hearing. The trial court concluded that Dueitt's claim for benefits was not brought within two years of his last exposure to hazardous occupational noise. We hold that the trial court properly applied the applicable statute of limitations in denying Dueitt's claim for workers' compensation benefits.
Dueitt also contends that even if he is not entitled to compensation benefits, he still may be entitled to accrued medical benefits pursuant to Ex parte Tuscaloosa County,522 So.2d 782 (Ala. 1988) (an injured employee's right to sue for accrued medical expenses is totally independent of the employee's right to sue for workers' compensation benefits). Dueitt did not raise this issue in the trial court, however. It is well settled that an appellate court will not consider an issue that has not been properly raised in the trial court.Smiths Water Authority v. City of Phenix City, 436 So.2d 827
(Ala. 1983).
Let the judgment be affirmed.
The foregoing opinion was prepared by SAM A. BEATTY, Retired Justice, Supreme Court of Alabama, while serving on active duty status as a judge of this court under the provisions of §12-18-10(e), Ala. Code 1975.
AFFIRMED.
ROBERTSON, P.J., and YATES, MONROE, and CRAWLEY, JJ., concur.