YATES, Presiding Judge.[1]
Terry Higginbotham sued his employer, Drummond Company, Inc., on December 29, 1997, seeking to recover workers’ compensation benefits for an injury he sustained to his lower back in September 1996, during the course of his employment with Drummond. Drummond answered on January 15, 1998, denying the allegations. On May 26, 1998, Higginbotham amended his complaint to allege a hearing loss caused by a continuous exposure to dangerous and hazardous levels of noise during the course of his employment with Drummond. On November 19, 1998, Drummond answered Higginbotham’s amended complaint, raising as a defense the statute of limitations. Following an ore tenus proceeding, the trial court, on March 1, 2001, entered a judgment finding that Higginbotham had suffered a 100% loss of earning capacity and that he was 100% permanently and totally disabled. Drummond appeals.
This case is governed by the 1992 Workers’ Compensation Act. This Act provides that an appellate court’s review of the standard of proof and its consideration of other legal issues shall be without a presumption of correctness. § 25 — 5—81(e)(1), Ala.Code 1975. It further provides that when an appellate court reviews a trial court’s findings of fact, those findings will not be reversed if they are supported by substantial evidence. § 25 — 5—81(e)(2). Our supreme court “has defined the term ‘substantial evidence,’ as it is used in § 12-21-12(d), to mean ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996), quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). This court has also concluded: “The new Act did not alter the rule that this court does not weigh the evidence before the trial court.” Edwards v. Jesse Stutts, Inc., 655 So.2d 1012, 1014 (Ala.Civ.App.1995).
The trial court made the following findings of fact and conclusions of law:
*526 “1. That on the dates of the injuries made the basis of plaintiffs Complaint, as amended, and at all times material thereto, that is: September 17, 1996, for the back injury, and on and prior to plaintiffs last date of employment in January 1997, for the claim of occupational loss of hearing, the plaintiff was employed by defendant and all parties were subject to and operating under the Workers’ Compensation Act of Alabama.
“2. That the plaintiff, at the time of filing of his Complaint, had three (3) dependents, namely his wife, and two (2) minor children, dependent on him for their support.
“3. That the plaintiff suffered two (2) injuries, which arose out of and in the course of his employment with the defendant, Drummond Company, Inc.; one (1) injury was an occupational hearing loss, and the other was an injury to his back and to his body as a whole.
“4. That on to-wit; September 17, 1996, the plaintiff suffered a permanent disability to his back and to his body as a whole as a result of an accident arising out of and in the course of his employment with defendant.
“5. That on and prior to plaintiffs last date of employment with the defendant in January 1997, and while working and acting within the line and scope of his employment for the defendant, the plaintiff suffered a hearing loss, which occupational disease arose out of and in the course of, his employment with defendant, and resulted from the nature of plaintiffs employment in and about the mining of coal due to large noisy machinery, which emits noises with high frequencies on a regular and recurring [basis] in said work environment, and which adversely affects coal miners’ hearing; and in particular, the Court finds that the coal mining industry has attached to it the particular hazard of hearing loss, and such hazards are different from and distinguishable from hazards associated with those ordinarily incident to employment in general. The hazard of hearing loss due to the large noisy machines used in the extraction and preparation of coal introduce noises that create hazardous hearing loss conditions for coal miners greater than those ordinarily incident to employment in general, and plaintiff was exposed to such hazards from the commencement of his employment by the defendant and continuing until termination of said employment.
[[Image here]]
“8. That the plaintiffs injuries are continuing and cause him to suffer problems with his hearing, including his inability to distinguish speech when there are competing background noises, as well as, to suffer intractable pain in his back, and leg, which causes plaintiff to lose his concentration, limits his range of motion, and limits his ability to exert himself and to perform manual labor, which is the only type of employment for which he was trained, and the only type of work he has performed almost all of his life.
[[Image here]]
“10. That the plaintiff has a High School education and joined the United States Marine Corps the day after he graduated from High School in 1973. The Court finds that after his military service, plaintiff enrolled in welding classes at Walker State Technical College, and that while enrolled in classes, he was hired to work full time at Baptist Medical Center-Princeton in the maintenance department performing heavy manual labor. That following his employment at BMC-Prineeton, and before being employed in the underground coal *527 mines in 1978, plaintiff worked several other jobs, all of which required heavy manual labor.
“11. That the plaintiff began working in the coal mines in 1978 and continued working in said coal mines until his injury on September 17, 1996. That plaintiff performed lighter work after September 17, 1996, until the defendant laid him off in January 1997. That the defendant removed plaintiff from the track crew where he worked with witness McKinley Hatcher, and placed him on a job that required him to perform lighter work after he suffered his back injury on September 17,1996.
“12. That the plaintiff is approximately six foot two inches tall and on September 17, 1996, weighed approximately 295 pounds. The Court finds that all of plaintiffs past work required physical exertion, a full range of motion of his body, including the ability to bend, twist, crawl, stoop, lift, and carry tools and equipment, and that while he worked in the coal mines plaintiff did work in spaces ranging in height at times from thirty-six (36) inches to sixty (60) inches, which made it impossible for the plaintiff to stand up straight while he worked, and further that almost all of plaintiffs previous work would be classified as heavy manual labor.
“13. That prior to the accident which occurred on September 17, 1996, the plaintiff was able to perform the full duties of an underground coal miner and was, in fact, performing those duties at the time of his work-related injury on September 17, 1996, even though the plaintiff had previously suffered other work-related injuries during the course of his employment by this defendant in the underground coal mines, including a previous injury or injuries to his back, including surgery on his back in 1987....
“14. That on or about September 17, 1996, the plaintiff and his co-workers, including witness McKinley Hatcher, were attempting to pick up an acetylene or oxygen bottle that weighed around 200 pounds; that the plaintiff turned after picking up the bottle and experienced a sudden sharp pain run down his legs and in his back so severe that he had to put his end of the bottle down and squat down on one knee. That after that incident the plaintiff walked out of the mines in a lot- of pain and reported the injury to an employee of defendant. That the plaintiff returned to work after the accident for several weeks, but since the pain he was experiencing did not subside the defendant referred plaintiff to a physician, Dr. Randolph George.
“15. The Court finds from the records of Randolph George, M.D., along with and the deposition testimony of Dr. George, that the plaintiff was prescribed an anti-inflammatory medication, a nonnarcotic pain reliever, a steroid, and a muscle relaxer, that the plaintiff was in constant, agonizing, excruciating pain and that a lumbar myelogram was performed on the plaintiff and that the results of the lumbar myelogram indicated to Dr. George that the plaintiff was suffering from a disk herniation large enough that his spinal canal was completely narrowed, and thereafter on December 16, 1997, Dr. George performed surgery on the plaintiffs back to remove the ruptured disk and also performed a foraminotomy. That subsequent to this surgery, the plaintiffs medical condition improved for a time but plateaued around January or February 1998 and that the plaintiff was still having problems and his medical condition was not improving, and that the plaintiff was taking at least two Lortab pain pills per day when Dr. George found the plaintiff *528 to have reached maximum medical improvement on January 19, 1998, and assigned the plaintiff a medical impairment rating under the AMA guidelines of fifteen percent (15%) to the whole man. That it was the opinion of Dr. George that the plaintiff could not return to work as an underground coal miner and that the reason he could not return to such work was due to the injury the plaintiff suffered on September 17, 1996, and the recurrent pain and symptoms that the plaintiff suffered, even after the December 16, 1997, surgery.
“16. That the plaintiff continued to see Dr. Charles Cross for pain management after his surgery. Dr. Cross had prescribed pain medication for plaintiff for lower back pain and muscle spasms prior to the incident in September 1996, and the plaintiff was able to function reasonably well and to continue working when he took said medication. The testimony of Dr. Cross shows that plaintiff could not return to work in the coal mines with the degree of pain he exhibited in February 1998, and furthermore, plaintiff could no longer perform coal mining work, nor any type of work that requires a high degree of flexibility and strength and absence of pain.
“17. That on and prior to his last date of employment in late January 1997, the plaintiff also suffered an occupational hearing loss as the same is defined in the Alabama Worker’s Compensation Act. That plaintiff was exposed to extremely loud noises in the coal mines in the normal course of his work.
“That during the entire course of his employment at the defendant’s Mary Lee Mine, plaintiff was exposed to extremely loud noises from belts, conveyors, and diesel equipment. Plaintiff was examined and evaluated by Dr. John Simmons; Dr. Simmons directed audio-grams be performed on plaintiff on January 5, 1992, and again on January 30, 1998. Both audiograms showed that plaintiff had suffered nerve type loss in both ears. Dr. Simmons stated that the type pattern on plaintiffs graphs was consistent with loss due to either industrial or some sort of a loud chronic noise exposure or hunting. Dr. Simmons agreed that plaintiffs hearing loss would be consistent with being exposed to the noise of machinery that they have in the underground coal mines around here. Dr. Simmons testified that a person suffering a hearing loss from chronic loud noise exposure is not able to understand exactly what is being said, especially if there is competing background noise.
[[Image here]]
“20. The Court observed the plaintiff and his witnesses, Steve Higginbotham and McKinley Hatcher, closely during the trial and listened carefully to all of their testimony and finds the plaintiffs testimony and the testimony of his two witnesses to be credible. Dr. William Crunk, plaintiffs vocational expert, testified by deposition, and he assigned plaintiff a one hundred percent (100%) disability, and a one hundred percent (100%) loss of earning capacity, and Vocational Expert, Renee Smith, a witness for defendant, assigned plaintiff a thirty-eight percent (38%) loss of vocation.
“21. The Court has reviewed all of the depositions and exhibits offered and made a part of the record in this cause, and this Court is of the opinion that due to the plaintiffs severe, intense, and intractable pain, as well as, and in addition to his physical limitations, (which is sufficient in itself to permanently and totally disable plaintiff), which in this case is compounded by plaintiffs occupational hearing loss, all as a result of his aforesaid work-related injuries, that *529 plaintiff has sustained total and permanent injuries or impairments which totally incapacitate him from working or being retrained for gainful employment, and resulted in a one hundred percent (100%) loss of earning capacity since August 1, 1997.”
Drummond argues that Higginbotham’s claim alleging the occupational-hearing loss is barred by the applicable statute of limitations. Hearing loss caused by noise on one’s job is considered an “occupational disease” pursuant to § 25-5-110(1), Ala.Code 1975. The statute of limitations for Higginbotham’s hearing-loss claim is governed by § 25-5-117, Ala.Code 1975, which provides that a claim for compensation for such a loss must be filed within two years of the date of injury, and for occupational diseases such as hearing loss, the date of injury is “the date of the last exposure to the hazards of the disease.” § 25-5-117(b), Ala.Code 1975. This court has held that in order for an employee to be exposed to the hazards of harmful noise, the “occupational noise [must be] sufficient both in intensity and duration to have the potential to cause damage to the employee’s hearing.” Dueitt v. Scott Paper Co., 695 So.2d 40, 44 (Ala.Civ.App.1996); see also Scott Paper Co. v. Morris, 708 So.2d 185 (Ala.Civ.App.1997).
Drummond argues that Higginbotham was last exposed to harmful noise levels several years before he filed his compensation claim based on a hearing loss. Higginbotham contends that his exposure to harmful noise levels continued up until he was laid off by Drummond in January 1997; therefore, he argues, his claim filed on May 26, 1998, alleging hearing loss is timely.
The record indicates that while Higginbotham was employed as an underground coal miner for Drummond he was constantly exposed to high levels of noise from machinery and explosives. Higginbotham began wearing hearing protection, at the latest in 1989 or 1990, and had hearing protection available to him when he began working at Drummond in 1978. He stated that he used hearing protection “pretty much off and on the whole time [he] worked at the mines.” During the course of his employment with Drummond, Higginbotham worked in several positions, including that of rock drill operator. The rock drill was a large hydraulic hammer with an approximately 18-foot-long “boom” that extended out to the face of the rock. Higginbotham testified that the operator would be exposed to the noise produced by the rock drill for the entire shift and that, even with hearing protection, by the “end of the shift your whole head would be rattling from listening to it.” As a rock drill operator, Higginbotham was also required to “shoot” explosives. He testified that he would “shoot” the explosives approximately 24 times per week and that he did this for approximately 3 years. After Higginbotham transferred off the rock drill operator’s position, he continued to use explosives to clear rock falls, and he testified that this continued up until he was laid off by Drummond. He also testified that there were times when he would have to remove his hearing protection in order to communicate with co-employees.
Dr. John Simmons first diagnosed Higginbotham with a high frequency or nerve-type hearing loss in 1992 and again in 1998. Dr. Simmons noted that the hearing loss had worsened from 1992 to 1998. Dr. Simmons testified that Higginbotham’s hearing loss is consistent with industrial noise or other loud chronic noise exposure, or with hunting. Finally, Dr. Simmons testified that the hearing protection used by Higginbotham should *530 have protected Higginbotham from the harmful effects of the noise and that he believed the hearing protection worn by Higginbotham was approved by the Occupation Safety and Health Administration (“OSHA”).
Drummond relies upon this court’s opinion in Singleterry v. ABC Rail Products Corp., 716 So.2d 1241 (Ala.Civ.App.1998). In Singleterry, this court affirmed a summary judgment in favor of the employer in a hearing-loss case based on the defense of statute of limitations. The employer had presented evidence from an occupational-safety expert indicating that the employer’s hearing-conservation program complied with OSHA regulations and that the earplugs provided by the employer were state-of-the-art devices that blocked all harmful noises. Additionally, the employer presented evidence from a medical expert that it was “highly unlikely” that the employee was exposed to harmful occupational noise if he was wearing his earplugs. 716 So.2d at 1241-42. Here, Dr. Simmons could testify only that Higginbotham’s hearing protection should have protected him from the harmful effects of the noise and that he believed the hearing protection worn by Higginbotham complied with OSHA regulations. The evidence presented in Singleterry, indicating that the employee had not been exposed to harmful occupational noise was much more definitive than the evidence presented in this ease. Further, Dr. Simmons testified that the hearing protection worn by Higginbotham should have protected him from the harmful effects of the noise, without having knowledge of the level and volume of the noise to which Higginbotham had been exposed.
Accordingly, we conclude that substantial evidence exists indicating that Higginbotham was exposed to harmful occupational noise during the entire course of his employment with Drummond, and, therefore, his claim alleging an occupational hearing loss is not barred by the statute of limitations.
Drummond next argues that the trial court erred in finding Higginbotham to be 100% permanently and totally disabled. We note that we apply a presumption of correctness to the court’s findings of fact, including its determination of disability. Where ore tenus evidence is presented to the trial court, the court’s findings of fact based on that evidence are presumed correct and will not be disturbed on appeal unless they are clearly erroneous and without supporting evidence. Mutual Savings Life Ins. Co. v. Hogue, 693 So.2d 530 (Ala.Civ.App.1997). The test for permanent total disability is the inability to perform one’s trade and to find gainful employment. Michelin North America, Inc. v. Hamby, 722 So.2d 770 (Ala.Civ.App.1998). The court must apply a two-pronged test in determining whether a permanent total disability exists: the employee must be found to be incapable of returning to his trade, as well as incapable of being retrained for gainful employment. Id. “Total disability does not mean an entire physical disability or absolute helplessness.” 722 So.2d at 773. The court is not required to make a specific finding that an employee cannot be retrained for gainful employment, because such a finding is implicit when the trial court concludes that the employee is permanently and totally disabled. Star Rails, Inc. v. May, 709 So.2d 44 (Ala.Civ.App.1997). This court has stated that “ ‘[g]ainful employment means employment similar in remuneration to that earned prior to the injury. Implicit in this is that the gainful employment sought to be restored must be “suitable.” By “suitable” we mean employment which is compatible with the employee’s pre-injury occupation, age, education, and *531 aptitude.’ ” Trans Mart, Inc. v. Brewer, 630 So.2d 469, 471 (Ala.Civ.App.1993), quoting Ex parte Beaver Valley Corp., 477 So.2d 408, 412 (Ala.1985). It is the duty of the trial court to make some determination as to the extent of disability. Hamby, 722 So.2d at 773. In making this determination, the trial court is not bound by expert testimony, but must consider all the evidence, including its own observations, and interpret that evidence to its own best judgment. Burden v. Huckaba, 708 So.2d 199 (Ala.Civ.App.1997). The court, in determining disability, may also consider the employee’s subjective complaints of pain. Hamby, 722 So.2d at 773.
The evidence indicates that Higginbotham’s employment history has been one of primarily heavy manual labor. He is in constant pain, for which he takes medication on a daily basis. Higginbotham’s treating physicians are both of the opinion that he could not return to work as a coal miner. The record further indicates that Higginbotham is incapable of performing work that involves heavy physical labor. Higginbotham’s vocational expert stated that he is 100% vocationally disabled. Further, Higginbotham’s disability related to his back condition is only compounded by his hearing loss. Accordingly, after carefully reviewing the record in this case, we cannot say that the trial court abused its discretion in determining that Higginbotham is 100% permanently and totally disabled.
AFFIRMED.
CRAWLEY, THOMPSON, and MURDOCK, JJ., concur.
PITTMAN, J., dissents.

. This case was originally assigned to another judge on the Court of Civil Appeals. It was reassigned to Presiding Judge Yates on March 11, 2002.