CRAWLEY, Judge.
The Drummond Company, Inc. (“the company”), appeals from a judgment awarding William Myers (“the worker”) benefits under the Workers’ Compensation Act based on a hearing loss the worker had allegedly sustained during the 22-year period in which he had worked for the company. The company challenges only one aspect of the judgment; it claims that the trial court erred to reversal in treating the worker’s injury as an injury to the body as a whole instead of as an injury to a scheduled member. See § 25-5-57(a)(3)a.l8., Ala.Code 1975; Drummond Co. v. Key, 854 So.2d 1159 (Ala.Civ.App.2002).
The standard of review this court uses when reviewing a trial court’s judgment in a workers’ compensation case is well settled. The Workers’ Compensation Act provides that “[i]n reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness.” § 25-5-81(e)(l), Ala.Code 1975. Our supreme court has stated the standard of review to be applied to the trial court’s . findings of fact as follows:
“[Ujnder the applicable standard of review, we will not reverse the trial court’s finding of fact if that finding is supported by substantial evidence — if that finding is supported by ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ”
Ex parte Trinity Indus., Inc., 680 So.2d 262, 268-69 (Ala.1996) (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989), and citing § 12-21-12(d), Ala.Code 1975)). See also § 25-5-81(e)(2), Ala.Code 1975. Further', “[t]he [1992 Workers’ Compensation] Act did not'alter the rule that this court does not weigh the evidence before the trial court.” Edwards v. Jesse Stutts, Inc., 655 So.2d 1012, 1014 (Ala.Civ.App.1995). However, our review of legal issues is without a presumption of correctness. § 25-5-81(e)(l), Ala.Code 1975; see also Ex parte Trinity Indus., 680 So.2d at 268.
The worker had worked for the company approximately 22 years, primarily as an electrician, repairing equipment in a coal mine owned by the company. He testified that he began experiencing problems with his hearing sometime between 1980 and 1985. He said that he consulted Dr. John Simmons about the problem; Dr. Simmons prescribed a hearing aid for him. Dr. Jack Aland testified in a deposition that he had examined the worker and had determined that the worker had moderate hearing loss. The evidence indicated that the company had provided earplugs to protect its workers’ hearing from the noise caused by the mining equipment; however, the worker testified that he had chosen not to use the earplugs because he had wanted to be able to hear the noise of the “top crack *470 ing”[1] that preceded the collapse of a mine wall.
On January 21, 1997, the employee stopped working for the company because it closed the mine in which he was employed. On October 9, 1998, the worker sued the company, alleging that he had contracted pneumoconiosis, an occupational lung disease, as a result of his exposure to dust, smoke, and dangerous fumes while performing his coal-mining duties during his employment with the company and that he was permanently disabled as a result of such exposure. On January 5, 1999, the worker amended his complaint to include a claim for permanent hearing loss as a result of being exposed to hazardous noise levels during his employment.
The trial court held a trial on August 15, 2001, at which the worker and his wife presented testimony. The deposition testimony of several pulmonary specialists; Dr. Jack Aland; and a vocational expert, William Crunk, along with the worker’s medical records, were admitted into evidence. Thereafter, the trial court entered a judgment on September 24, 2001, denying the worker’s claim based on pneumoconiosis but finding him 37% permanently partially disabled based on his hearing loss. The trial court’s judgment stated, in pertinent part:
“That on and prior to [the worker’s] last date of employment with [the company] on January 21, 1997, and while working within the line and scope of his employment for [the company], [the worker] suffered an occupational hearing loss, which occupational disease arose out of and in the course of his employment for [the company] and resulted from the nature of [the worker’s] employment in and about the mining of coal due to large noisy machinery, which machinery emits noises with high frequencies and high decibel levels on regular and recurring bases in said work environment, and which adversely affects coal miners’ hearing. In particular, this Court finds that the coal mining industry has attached to it the particular hazard of hearing loss, and such hazard is different from and distinguishable from hazards associated with those ordinarily incident to employment in general. [The worker] was exposed to such hazards from the commencement of his employment by [the company] and continuing until termination of said employment.
[[Image here]]
“That [the worker’s] injury is continuous and permanent. As a proximate consequence of said injury, [the worker] suffers severe hearing loss. That [the worker’s] injuries are disabling and place limitations on his ability to obtain suitable employment and his ability to earn a livelihood.
[[Image here]]
“That [the worker] served in the military for two years. That [the worker] worked as an auto mechanic while in the military. That, after discharge from the military, he attended G.I. school and obtained his high school diploma. That following his military service, [the worker] worked as a union carpenter for more than twenty (20) years. Following that employment, [the worker] worked as a coal miner for approximately twenty-two (22) years. That [the worker] has no special training or skills other than mechanic work, carpentry work, and coal mining work. That [the work *471 er] has a severe hearing impairment, which makes it difficult for him to hear and carry on a conversation, especially in a noisy environment.
[[Image here]]
“The Court specifically finds that [the worker] has sustained a thirty-seven percent (37%) permanent partial disability pursuant to the Workers’ Compensation Act of Alabama, and that [the worker] has lost at least thirty-seven percent (37%) of his access to employment and/or his employability, which is based upon [the worker’s] abilities in his presently disabled condition as a result of his age, education and experience. That the thirty-seven percent (37%) permanent partial disability to [the worker] is a direct result of [the worker] contracting an occupational-related hearing loss, which said condition causes [the worker] to be thirty-seven percent (37%) permanently partially disabled and incapacitated from working and having access to employment in the job market to that extent.”
The company argues that the trial court failed to follow our supreme court’s test, which was recently restated in Ex parte Drummond Co., 837 So.2d 831 (Ala.2002), for determining when an injury to a scheduled member could be compensated outside the schedule and treated as a disability to the entire body. We agree.
The supreme court explained its reason for restating the test as follows:
“[T]he [test set forth in Bell v. Driskill, 282 Ala. 640, 213 So.2d 806 (1968),] permitted an injury to a scheduled member to be compensated outside the schedule if the effect of the injury extends to other parts of the body and produces a greater or more prolonged incapacity than that which naturally results from the injury to the specific member. However, the Court of Civil Appeals has substantially expanded the Bell test to include, as effects that will take the injury outside the schedule: (1) pain, swelling, and discoloration; (2) work restrictions; (3) impairment ratings to the body as a whole; and (4) vocational disabilities. It also appears that the Court of Civil Appeals has considered the worker’s ability to find future employment as a factor in deciding whether an injury to a scheduled member should be compensated outside the schedule.”
Ex parte Drummond, 837 So.2d at 834 (footnotes omitted). The Ex parte Drum-mond Court then restated the proper test to follow when determining whether to compensate an - injury to a scheduled member outside the schedule as follows: “ ‘[I]f the effects of the loss of the member extend to other parts of the body and interfere with their efficiency, the schedule allowance for the lost member is not exclusive.’ ” 837 So.2d at 834, quoting 4 Lex K. Larson, Larson’s Workers’ Compensation Law § 87.02 (2001).
Hearing loss is a scheduled injury. See § 25-5-57(a)(3)a.l8., Ala.Code 1975. Applying the test restated by the supreme court in Ex parte Drummond, the compensation provided by application of the schedule is the worker’s exclusive remedy, unless the worker has demonstrated that his hearing loss has “ ‘extended] to other parts of [his] body and interfere^] with their efficiency.’ ” 837 So.2d at 833.
The evidence does not support such a demonstration. The evidence relating to the worker’s hearing loss is limited to his ability to hear. William Crunk, the worker’s vocational expert, made no reference to the worker’s hearing loss; his testimony and report were based solely on the worker’s pulmonary problems. The worker’s wife testified only about the worker’s lung *472 disease and did not refer to his hearing loss. The worker testified briefly about his hearing loss, but he did not indicate that it affected any other portion of his body. In his deposition, Dr. Jack Aland addressed the severity of the worker’s hearing loss and whether the impairment could be related to exposure to the noise of the mining equipment, but Dr. Aland did not address whether the worker’s hearing loss interfered with the efficiency of any other portion of his body.
Further, the trial court’s judgment does not contain any finding that the worker’s hearing loss adversely affected any other portion of his body. On the contrary, in its judgment the trial court states: “That the thirty-seven percent (37%) permanent partial disability to [the worker] ... causes [the worker] to be thirty-seven percent (37%) permanently partially disabled and incapacitated from working and having access to employment in the job market to that extent.” The trial court expressly stated that the primary factor it relied upon in making its determination that the worker was 37% permanently partially disabled to the body as a whole was the worker’s limited access to future employment.
The express rationale the trial court stated in support of its disability determination indicates that the trial court applied the “substantially expanded” Bell test that was overruled by our supreme court — not the more restrictive, restated test set out in Ex parte Drummond, — in determining when a scheduled injury may be compensated outside the schedule. 837 So.2d at 834. Therefore, the judgment is reversed and the case is remanded for the trial court to enter a judgment awarding benefits to the worker for his hearing loss by application of the scheduled allowance set forth at § 25-5-57(a)(3)a.l8., Ala.Code 1975.
REVERSED AND REMANDED.
YATES, P.J., and THOMPSON, PITTMAN, and MURDOCK, JJ., concur.

. It is not clear from the record what the term "lop” in this phrase refers to, but we presume from the context in which the term is used that the worker is referring to the top of the mine wall.