MURDOCK, Judge.
Goodyear Tire & Rubber Company (“Goodyear”) appeals from a judgment of the Etowah Circuit Court finding that Cecil Latta, a former Goodyear employee, had suffered a 20% permanent partial disability as a result of work-related hearing loss and awarding Latta 300 weeks of workers’ compensation benefits on the basis of the injury. We affirm in part, reverse in part, and remand.
Latta began working for Goodyear in July 1968. He worked in various capacities, spending the last 10 years of his employment with Goodyear working on the mill line at a Goodyear plant. The mills use 300 to 500 horsepower engines and break down rubber into smaller components; the machines run continuously for eight-hour shifts. It is undisputed that Latta worked in high noise areas during his entire employment at Goodyear, though no testimony was provided at trial as to the specific decibel level of the machines that produced the noise.
Goodyear began testing employees’ hearing annually in approximately 1984. In the early to mid-1980s, Goodyear began requiring employees to wear hearing protection such as earplugs and earmuffs. Latta testified that his hearing loss became obvious to him in the mid- to late 1980s. Employees of Goodyear testified on Latta’s behalf that he always wore the required hearing protection; it is undisputed that Latta wore hearing protection at Goodyear for at least 10 years before he retired from Goodyear effective July 1, 1999.
Latta testified that he decided to retire from Goodyear because he could no longer hear trucks passing by his work station, which he felt produced a dangerous situation. Latta testified that his last day of exposure to loud noise was his last day of work, June 30,1999.
After retiring from Goodyear, Latta took a job working part-time as a courier for a bank. In early 2001, Goodyear purchased hearing aides for Latta to help him *1183 in the performance of his work duties in his part-time employment.
Latta first visited Dr. Dennis Pappas of the Pappas Ear Clinic on October 12, 2000. Dr. Pappas diagnosed Latta with sensorin-eural hearing loss, which is permanent hearing loss. Latta was also seen by clinical audiologist Lynn Carmichael at the Pappas Clinic on several occasions in 2001. Both Dr. Pappas and Carmichael testified that Latta has sustained a combined 22% hearing loss in both ears. Dr. Pappas estimated that 60% of the hearing loss in the right ear was noise-induced and that 40% of the hearing loss in the left ear was noise-induced. Carmichael testified that a “significant portion” of the hearing loss sustained by Latta is not noise-induced, but she could not identify what else may have caused it.
Latta was also evaluated by Joseph Miller, a vocational-rehabilitation specialist, on May 15, 2000. Based on Miller’s evaluation of Latta and his review of records from Dr. Robin Auerbach, an audiologist who periodically evaluated Latta starting in 1996, Miller estimated Latta’s vocational loss due to the hearing loss to be 51.1%. Latta testified that even with his hearing aides he has a difficult time in his daily life. It is undisputed that Latta does not claim that he suffered any injury, other than his hearing loss, as a result of his employment at Goodyear.
Latta filed suit against Goodyear on December 27,1999, seeking workers’ compensation benefits for hearing loss he claims he sustained during his employment at Goodyear as a result of being exposed to high noise levels. After receiving evidence ore tenus on November 5, 2001, the trial court entered its judgment on May 6, 2002, awarding Latta workers’ compensation benefits for binaural hearing loss and assigning Latta a 20% permanent partial disability. The trial court awarded Latta a net total of $13,245.37 in accrued benefits and $90.10 per week for 140 weeks in future net benefits. On May 13, 2002, Goodyear filed a motion to alter, amend, or vacate the judgment or, in the alternative, for a new trial. On June 5, 2002, Goodyear supplemented its postjudgment motion by bringing to the trial court’s attention our Supreme Court’s decision in Ex 'parte Drummond Co., 837 So.2d 831 (Ala. 2002), which was decided on May 31, 2002, and concerned when benefits are permitted to be awarded outside the compensation schedule found in § 25-5-57, Ala.Code 1975. Goodyear’s postjudgment motion was deemed denied by operation of law on August 12, 2002, 90 days after the entry of the final judgment. See Rule 59.1, Ala. R. Civ. P. The trial court entered an order on August 20, 2002, purportedly denying Goodyear’s postjudgment motion. Goodyear appeals.
This case is governed by the 1992 Workers’ Compensation Act, § 25-5-1 et seq., Ala.Code 1975.
“[The 1992 Workers’ Compensation] Act provides that an appellate court’s review of the standard of proof and its consideration of other legal issues shall be without a presumption of correctness. § 25 — 5—81(e)(1), Ala.Code 1975. It further provides that when an appellate court reviews a trial court’s findings of fact, those findings will not be reversed if they are supported by substantial evidence. § 25-5-81(e)(2). Our supreme court ‘has defined the term “substantial evidence,” as it is used in § 12-21-12(d), to mean “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” ’ Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996), quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870,
*1184 871 (Ala.1989). This court has also concluded: ‘The new Act did not alter the rule that this court does not weigh the evidence before the trial court.’ Edwards v. Jesse Stutts, Inc., 655 So.2d 1012, 1014 (Ala.Civ.App.1995).”
Drummond Co. v. Higginbotham, 851 So.2d 523, 525 (Ala.Civ.App.2002).
Goodyear first argues that the trial court should have denied Latta’s claim for benefits based on the two-year statute of limitations for such injuries. Hearing loss caused by noise on the job is considered an “occupational disease” pursuant to § 25-5-110(1), Ala.Code 1975. The applicable statute of limitations provides that a claim for workers’ compensation benefits based on an occupational disease is barred unless brought within two years from the date of the injury. See § 25-5-117(a), Ala.Code 1975. “For the purposes of occupational diseases ... ‘the date of the injury’ shall mean the date of the last exposure to the hazards of the disease in the employment of the employer in whose employment the employee was last exposed to the hazards of the disease.” § 25 — 5—117(b), Ala.Code 1975. This court has held that for an employee to be exposed to the hazards of harmful noise, the “occupational noise [must be] sufficient both in intensity and duration to have the potential to cause damage to the employee’s hearing.” Dueitt v. Scott Paper Co., 695 So.2d 40, 44 (Ala.Civ.App.1996).
Goodyear contends that because Latta was aware of his hearing loss at least by the late 1980s and because he wore ear protection consistently for at least the last 10 years of his employment with Goodyear, his “last exposure to the hazards of the disease” was more than two years before he filed suit in December 1999. In support of its position, Goodyear relies on three cases: Singleterry v. ABC Rail Prods. Corp., 716 So.2d 1241 (Ala.Civ.App. 1998); Scott Paper Co. v. Morris, 708 So.2d 185 (Ala.Civ.App.1997); and Dueitt v. Scott Paper Co., supra.
In Singleterry, this court affirmed the trial court’s entry of a summary judgment in favor of the employer in a suit for workers’ compensation benefits brought by a retired employee based on hearing loss. The employee worked for the employer from 1970 to 1995. The employer made the wearing of earplugs mandatory starting in the mid-1980s. From that point forward, the employee wore ear protection when he was subjected to high noise levels. The employee testified that he became aware in the mid-1980s that he had suffered hearing loss. This court determined that the employee’s claim was barred by the two-year statute of limitations, noting that the employee had first become aware of his hearing loss in the mid-1980s and that evidence in support of the employer’s motion demonstrated that the employee’s earplugs were sufficient to block harmful noise. Goodyear contends that Singleter-ry is analogous to this case and that it dictates that Latta’s claim is barred by the statute of limitations.
However, there exists a significant difference between the facts of Singleterry and the facts of this case. In Singleterry, there was specific testimony about the effect of earplugs in reducing the noise levels to which employees who wore them were exposed. This court noted in Sin-gleterry that the employer presented affidavit testimony from an occupational-safety expert who “stated that [the employer’s] hearing conservation program complied with OSHA [Occupational Safety and Health Administration] regulations on occupational noise exposure. He also stated that the earplugs provided by [the employer] were state-of-the-art devices that had noise reduction ratings shown to be sufficient to protect against any potentially *1185 harmful noise exposure.” 716 So.2d at 1241. In addition, the employer also presented the deposition testimony of the doctor who treated the employee after the employee retired; that doctor testified that, “assuming that [the employee] had been wearing earplugs since the mid-1980s, it was highly unlikely that the noise at ABC caused his hearing loss.” Id. The Singleterry court emphasized those points in affirming the trial court’s entry of the summary judgment in favor of the employer based on the statute of limitations.
In contrast, there is no such specific testimony regarding the effect of hearing protection in this case. In deposition testimony, Carmichael was asked what kind of ameliorative effect she expected hearing protection to have in reducing the potential for hearing loss. Carmichael responded:
“It would depend on the actual device. There’s a noise reduction rating, NRR, and different plugs have different noise reduction rating[s]. Usually, it’s about 17 to 20 decibels [and] it should reduce the sound by that level, that’s if they are worn on a regular basis and put in properly and any of those sort of things.”
There is no other evidence in this case regarding the effect of hearing protection. No one testified as to the noise-reduction rating of the specific earplugs worn by Latta, whether the hearing protection complied with Occupational Safety and Health Administration (“OSHA”) regulations, or whether Latta would have sustained hearing loss at the Goodyear plant at which he worked if the hearing protection was worn on a consistent basis. As was also true in Higginbotham, discussed in more detail, infra, “[t]he evidence presented in Singleterry, indicating that the employee had not been exposed to harmful occupational noise was much more definitive than the evidence presented in this case.” 851 So.2d at 530.
In Dueitt, this court again affirmed a trial court’s judgment in favor of the employer on a workers’ compensation claim based on hearing loss because of the two-year statute of limitations. The employee had worked for the employer from 1961 to 1993 at a paper mill. The employee testified that he began using hearing protection in the early 1970s but that there had been some instances where he had forgotten to use it or had removed it to carry on conversations. The employee also testified that he first became aware that he had sustained hearing loss in the mid-1970s. Goodyear contends that the facts of Dueitt are sufficiently similar to the facts of the present case to warrant a reversal of the trial court. We disagree.
In Dueitt, by the employee’s own admission, he was not constantly exposed to loud noise areas in his workplace. This court found that the evidence showed that “ ‘[the employee] ha[d] not been exposed to a hazard from occupational noise for many years,’ ” and it emphasized that “ ‘an employee must be exposed to noise which is loud enough, for a long enough period of time, before he is exposed to any hazard from occupational noise.’ ” 695 So.2d at 43.
In the present case, unlike in Dueitt, Latta testified that he worked in high noise areas his entire career, testimony that was corroborated by the testimony of fellow employees and was not disputed by Goodyear. In other words, there was substantial evidence that Latta had been exposed to occupational noise that was “sufficient both in intensity and duration to have the potential to cause damage to [his] hearing.” Id. at 44.
This difference is also what distinguishes this case from Morris, where the employee worked for Scott Paper Company from 1961 to 1994. In Morris, the employer began requiring employees to *1186 wear hearing protection in the 1970s, and the employee used the hearing protection consistently and regularly after that time. However, starting in 1986, the employee began working in a control room in a new portion of the mill and “spent 80% of his work day inside the control room, where he was not exposed to high levels of noise.” 708 So.2d at 186. Because of this fact, likening the case to Dueitt, this court ruled that the employee had “not brought [his suit] within two years of his last exposure to the ‘hazards of the disease.’ ” Id. at 187. Again, in this case there was evidence from which the trial court could reasonably infer that Latta was exposed to loud noise up to the day of his retirement; Moms, therefore, does not provide support for a reversal in this case.
A much closer parallel to the facts in this case is found in Higginbotham, supra. In Higginbotham, the employee worked in coal mines for Drummond Company, Inc., from 1978 to 1996 and was exposed throughout the course of his employment to “ ‘extremely loud noises from belts, conveyors, and diesel equipment.’ ” 851 So.2d at 528. The employee began wearing hearing protection consistently in 1989 or 1990 at the latest, and he testified that he used hearing protection “ ‘pretty much off and on the whole time [he] worked at the mines.’ ” Id. at 529. A doctor testified that the employee’s hearing loss was consistent with exposure to chronic loud noise exposure. The doctor also testified that the hearing protection “should have protected [the employee] from the harmful effects of the noise and that he believed the hearing protection worn by [the employee] was approved by [OSHA].” Id. at 529-80. This court ruled that such evidence concerning the effect of hearing protection was not definitive enough to demonstrate that the employee’s last exposure to the “hazards of the disease” had been outside the two-year limitations period. This court affirmed the trial court’s award of workers’ compensation benefits to the employee.
In the present case, as in Higginbotham, there was chronically loud noise in the employee’s workplace throughout the period of his employment. Also as in Higginbotham, the evidence pertaining to the use of hearing protection was not of such a nature that the trial court could not reasonably infer that the employee was exposed to harmful noise throughout the period of his employment. As we did in Higginbotham, we therefore affirm the trial court’s determination that Latta brought his suit within two years of the date of his injury and that his claim is not barred by the statute of limitations.
Goodyear’s second argument is that, even if the trial court did not err in awarding some benefits in this case, it erred in awarding Latta benefits for 300 weeks, rather than for the scheduled 163 weeks, because the injury was not accompanied by any other physical disability. Hearing loss is a scheduled injury under the Workers’ Compensation Act, which provides that compensation of 66 2/3% of an employee’s average weekly earnings shall be paid during a period of 163 weeks for the complete and permanent loss of hearing in both ears. See § 25-5-57(a)(3)a.18., Ala. Code 1975. The trial court in this ease departed from the schedule and awarded Latta benefits of 20% of his average weekly earnings for 300 weeks, apparently basing its award on the provisions of § 25-5-57(a)(3)g., Ala.Code 1975.
In Bell v. Driskill, 282 Ala. 640, 213 So.2d 806 (1968), our Supreme Court created an exception to scheduled injuries:
“[A]lthough the injury itself is to only one part or member of the body, if the effect of such injury extends to other parts of the body, and produces a great *1187 er or more prolonged incapacity than that which naturally results from the specific injury, or the injury causes an abnormal and unusual incapacity with respect to the member, then the employee is not limited in his recovery under the [Workers’] Compensation Law to the amount allowed under the schedule for injury to the one member.”
282 Ala. at 646, 213 So.2d at 811. However, as the Supreme Court observed in Ex parte Drummond Co., the Bell exception was expanded over the years to include several effects of an injury that take it outside of the schedule, including: “(1) pain, swelling, and discoloration; (2) work restrictions; (3) impairment ratings to the body as a whole; and (4) vocational disabilities.” Drummond, 837 So.2d at 834 (footnotes omitted). The Court noted further that, over the years, the Court of Civil Appeals also had “considered the worker’s ability to find future employment as a factor in deciding whether an injury to a scheduled member should be compensated outside the schedule.” Id.
The Supreme Court in Ex parte Drummond reined in the expanded Bell exception and adopted the following language as the test for determining whether an injury to a scheduled member should be treated as unscheduled: “ ‘if the effects of the loss of the member extend to other parts of the body and interfere with their efficiency, the schedule allowance for the lost member is not exclusive.’ ” 837 So.2d at 834 (quoting 4 Lex K. Larson, Larson’s Workers’ compensation Law § 87.02 (2001)). The Court also quoted with approval the rule stated in Leach Manufacturing Co. v. Puckett, 284 Ala. 209, 214, 224 So.2d 242, 246-47 (1969):
“ ‘[W]here there is an injury resulting in the loss of a member, or the loss of the use of a member, so as to invoke payment of compensation as provided [by the Workers’ Compensation Act], and where this is not accompanied by other physical disability (of the body), the payment of the specified sum is intended to fully compensate the injured employee for the injury sustained.’ ”
Ex parte Drummond, 837 So.2d at 835. In the context of a workers’ compensation claim based on hearing loss, “the compensation provided by application of the schedule is the worker’s exclusive remedy, unless the worker has demonstrated that his hearing loss has 1 “extended] to other parts of [his] body and interfere[d] with their efficiency.” ’ ” Drummond Co. v. Myers, 868 So.2d 468, 471 (Ala.Civ.App.2003) (quoting Ex parte Drummond, 837 So.2d at 833). Latta admitted at trial that he does not claim that his hearing loss has affected any other part of his body. Thus, under the rule of Ex parte Drummond, there are no grounds for compensating Latta’s hearing loss outside the provisions of § 25-5-57 for loss of use of a member. See §§ 25-5-57(a)(3)a. and d.
Latta counters this conclusion by contending that the Supreme Court did not intend for Ex parte Drummond to be applied retroactively. Latta points out that the trial court in the present case entered its judgment on May 6, 2002, while Ex parte Drummond was not decided by our Supreme Court until May 31, 2002. Thus, argues Latta, the trial court simply applied the law as it had been interpreted before the time it entered its judgment, awarding Latta benefits outside of the schedule due to vocational loss as a result of his disability.
In support of his position, Latta cites language from Chief Justice Hooper’s special writing in McCullar v. Universal Underwriters Life Insurance Co., 687 So.2d 156 (Ala.1996):
“This Court has, from the 1800’s until today, repeatedly held that a statutory *1188 construction that departs from a previous construction should be applied prospectively only. See Burke v. State, 385 So.2d 648, 652 (Ala.1980). The rule of prospectivity has been applied without exception when rules governing contractual or property rights that have become vested in reliance upon a settled construction are later overturned.”
687 So.2d at 184 (Hooper, C.J., concurring in part and dissenting in part). The main opinion authored by Justice Cook in McCullar, however, contains a different view:
“Although circumstances occasionally dictate that judicial decisions should be applied prospectively, James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, 536, 111 S.Ct. 2439, 2443-44, 115 L.Ed.2d 481 (1991), retroactive application of judgments is ‘overwhelmingly the norm[al]’ practice. Id. at 535, 111 S.Ct. at 2443. Retroactivity ‘is in keeping with the traditional function of the courts to decide cases before them based upon their best current understanding of the law.... It also reflects the declaratory theory of law, ... according to which the courts are understood only to find the law, not to make it.’ Id. at 535-36, 111 S.Ct. at 2443.”
687 So.2d at 165 (Almon and Shores, JJ., concur). Neither of those opinions is binding precedent. See Reynolds Metals Co. v. State Dep’t of Indus. Relations, 192 So.2d 419, 423 n. 5 (Ala.Civ.App.2000) (“[T]he main opinion in McCullar v. Universal Underwriters Life Ins. Co., 687 So.2d 156 (Ala.1996) ... is not binding precedent, having been concurred in by only three justices of the Alabama Supreme Court.”).
In any event, it is not necessary for this court to decide in the present case whether Ex parte Drummond ought to be applied retroactively in the strictest sense. The present case had not been appealed when the Supreme Court’s decision in Ex parte Drummond was issued; in fact, Goodyear filed a supplement to its post-judgment motion on June 5, 2002, to bring the May 31, 2002, decision in Ex parte Drummond to the trial court’s attention. The trial court nonetheless denied the motion to alter, amend, or vacate the judgment or, in the alternative, for a new trial, and Goodyear appealed to this court, again pointing to the holding in Ex parte Drummond. Based on this procedural history (and consistent with the declaratory theory of law acknowledged in the main opinion in McCullar), we are clear to the conclusion that the rule stated in Ex parte Drum-mond is properly applied in this case. See also Myers, 868 So.2d at 471 (applying the rule of Ex parte Drummond to a case appealed before Ex parte Drummond was decided).
In the alternative, Latta argues that Ex parte Drummond is distinguishable from the present case because Ex parte Drum-mond concerned a knee injury, not a hearing-loss injury. However, the language in Ex parte Drummond regarding when an injury may be compensated outside of the schedule is general in nature and is not specific to a particular kind of on-the-job injury. Moreover, as noted, this court has applied Ex parte Drummond in a hearing-loss case, Myers, supra. Thus, Latta’s argument attempting to distinguish Ex parte Drummond from the present case is without merit. Because it is undisputed that Latta’s hearing-loss injury does not affect any other part of his body, it was impermissible for the trial court to award him benefits outside the provision of § 25-5-57 pertaining to loss of use of scheduled members.
Based on the foregoing, we affirm that part of the trial court’s judgment refusing to dismiss Latta’s action based on the two-year statute of limitations. However, we *1189 reverse the trial court’s award of benefits and remand the case to the trial court. Although Latta’s loss of hearing is not “complete” in either ear as contemplated by § 25-5-57(a)(3)a.18., Latta’s award is limited under § 25-5-57(a)(3)d. to a period of 163 weeks. On remand, the trial court is instructed make findings of fact based on the existing record and to enter a judgment consistent with these statutory provisions. See also Dowdell v. Vermont American Corp., 808 So.2d 36 (Ala.Civ.App.2001).
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, P.J., and CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.